CORY CORPORATION and Mitchell Manufacturing Company, Delaware corporations, Plaintiffs-Appellees,

v.

Ernest J. SAUBER, Defendant-Appellant.

No. 12479.

United States Court of Appeals
Seventh Circuit.

March 20, 1959.

Rehearing Denied May 26, 1959.

Charles K. Rice, Asst. Atty. Gen., Grant W. Wiprud, Lee A. Jackson, A. F. Prescott, Attys., Dept. of Justice, Washington, D. C., Donald S. Lowitz, Asst. U. S. Atty., Robert Tieken, U. S. Atty., Chicago, Ill., for appellant.

Edwin A. Rothschild, Stanford Clinton, Sidney M. Perlstadt, Chicago, Ill., for appellee.

Before DUFFY, Chief Judge, and SCHNACKENBERG and HASTINGS, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

These are consolidated suits for refunds of excise taxes collected on sales effected in 1954 and 1955, in which the district court ruled that taxpayer Cory Corporation [1] is entitled to the refunds sought. From a judgment entered accordingly, defendant [2] appealed. Summarized, the material facts as found by the district court are now stated.

Cory and Mitchell Manufacturing Company, herein called Mitchell, were at

1. Herein called Cory.

2. Ernest J. Sauber was at the times herein mentioned the district director of internal revenue for the United States, at Chicago, Illinois.

all relevant times engaged in the manufacture and sale of air conditioning units.[3]

On May 28, 1954, Mitchell sold to Thomas Carlin an air conditioning unit which it had manufactured. Defendant assessed $15.61 as manufacturer's excise tax on this sale (being 10% thereof) under § 3405(c) of the 1939 Internal Revenue Code.[4] On August 8, 1955, Cory sold to Keith McKy an air conditioning unit which it had manufactured. Defendant assessed $14.32 as manufacturer's excise tax on this sale under § 4111 of the 1954 Code.[5] Both assessments were 10% of the manufacturer's sale price, as provided in said sections. The seller in each instance paid the tax and, with the written consent of the ultimate purchaser, filed claim for refund. It has been stipulated and found by the court

that "the present civil actions are prototype or test cases to determine whether plaintiff's air conditioners are subject to federal excise tax." The present district director, at Chicago, has assessed and proposes to assess large amounts in excise taxes on the sales of air conditioning units similar to those involved in the sales herein.

In 1948, the Commissioner of Internal Revenue published a revenue ruling (S.T. 934, 1948–2 Cum.Bull. 180).[6] In 1954, the Commissioner published a ruling revising and superseding the 1948 ruling (Rev.Rul. 54–462, 1954–2 Cum.Bull. 410).[7]

The May 28, 1954 sale occurred while the 1948 ruling was in effect. With that exception, relevant air-conditioner sales were made while the 1954 ruling was in effect.

---

3. Until November, 1957, Mitchell was a subsidiary of Cory. In that month Mitchell merged into Cory, and the latter thus succeeded to all the rights and liabilities of the former.

4. 26 U.S.C.A. (I.R.C.1939) § 3405.

5. 26 U.S.C.A. (I.R.C.1954) § 4111.

6. This ruling provided:
   "Advice is requested concerning the type of self-contained air-conditioning units subject to tax under section 3405(c) of the Internal Revenue Code, as amended.
   "Section 3405(c) of the Code, as amended, imposes a tax of 10 per centum on sales by the manufacturer, producer, or importer of self-contained air-conditioning units.
   "It is held that the type of self-contained air-conditioning unit subject to tax under section 3405(c) of the Code, as amended, is a factory-made encased assembly primarily designed for free delivery of air and for installation in a window or in front of a window which (1) contains means for moving outside air through its condenser, (2) includes means for cooling, dehumidifying, and circulating the air of a room, *and* (3) *has a total motor horsepower of less than 1 horsepower* or a total cooling capacity of less than 10,000 B.T.U.'s per hour at standard American Society of Refrigerating Engineers test conditions as set forth in ASRE Circular No. 16, dated June, 1940." (Italics supplied for emphasis.)

7. This ruling provided:
   "Advice is requested concerning the types of self-contained air-conditioning units which are subject to tax under section 3405(c) of the Internal Revenue Code of 1939.
   "Section 3405(c) of the Code imposes a tax of ten per centum on sales by the manufacturer, producer, or importer of self-contained air-conditioning units.
   "It is held that the type of self-contained air-conditioning unit subject to tax under section 3405(c) of the Code includes a unit, whether a factory-made encased assembly or one sold for assembly on installation, primarily designed for free delivery of air and for installation in or in front of a window or other opening which (1) contains means for moving outside air through its condenser, (2) incorporates means for cooling, dehumidifying, and circulating the air of a room or other enclosure, *and* (3) *has a total motor horsepower of less than 1 horsepower for motor-driven compressor types*, or, in the case of absorption types, a total cooling capacity of less than 10,000 B.T.U. per hour at standard American Society of Refrigerating Engineers test conditions as set forth in ASRE Circular No. 16, dated June 1940.
   "S.T. 934, C.B.1948–2, 180 is hereby superseded." (Italics supplied for emphasis.)

§ 3405 of the 1939 Code, supra, relevant here provided:

"§ 3405. Tax on mechanical refrigerators, quick-freeze units, and self-contained air-conditioning units

"There shall be imposed on the following articles (including in each case parts or accessories therefor sold on or in connection with the sale thereof) sold by the manufacturer, * * * a tax equivalent to 5 per centum (10 per centum in the case or articles subject to tax under subsection (c)) of the price for which so sold:

"(a) Refrigerators and quick-freeze units. Household type refrigerators * * *

"(b) Refrigerating and freezing apparatus. Cabinets, compressors, condensers, condensing units, evaporators, expansion units, absorbers, and controls, (hereinafter referred to as 'refrigerator components') for, or suitable for use as parts of or with, household type refrigerators * * *

"(c) Air-conditioners. Self-contained air-conditioning units."

§ 4111 of the 1954 Code, supra, relevant here provides:

"Subchapter B—Household Type Equipment, Etc.

"Part

"I. Refrigeration equipment.

"II. Electric, gas, and oil appliances.

"III. Electric light bulbs.

"Part I—Refrigeration Equipment

"Sec.

"4111. Imposition of tax.

"4112. Definitions.

"4113. Exemptions for manufacturers.

"§ 4111. Imposition of tax

"There is hereby imposed upon the sale of the following articles (including in each case parts or accessories therefor sold on or in connection with the sale thereof) by the manufacturer, * * * a tax equivalent to the specified percent of the price for which so sold:

"Articles taxable at 5 percent—

"Household type refrigerators * * *

"Household type units for the quick freezing * * *

"Articles taxable at 10 percent—

"Self-contained air-conditioning units."

Both parties herein agree that the 10% tax applies only to self-contained air conditioning units of the household type. For the purposes of this opinion, we adopt that construction of the Act.

However, defendant contends that the administrative rulings, supra, were not intended by the Commissioner to exempt household-type, self-contained units from the excise tax, and that, if they do confer such an exemption, they are null and void.

Prior to issuing these rulings, the Commissioner solicited the views of the air conditioning industry. He received responses. From this investigation the Commissioner learned the following facts, *inter alia:*

The air conditioning industry produces self-contained air-conditioning units containing compressor motors and the motor manufacturer, when a new motor model is designed, assigns to it a nominal horsepower rating. This assignment is not made by the manufacturer of the compressor or of the finished air conditioner. It is made on the basis of specifications before any motor is manufactured or tested. Tecumseh, the principal manufacturer of compressors in the United States, uses electric motors manufactured by the General Electric Company, The Emerson Electric Mfg. Co. and Delco Products Division of General Motors Corporation. Tecumseh specifications for these motors do not specify actual or rated horsepower. Tecumseh conducts regular tests of air conditioning units containing its compressors, including plaintiffs' conditioner. These tests are made in accordance with a standard pre-

scribed in June 1940 by the American Society of Refrigerating Engineers, called ASRE, which is referred to in the aforesaid rulings by the Commissioner. Underwriters Laboratories also have a standard test as has also the Air Conditioning and Refrigerating Institute (ARI).

By the ASRE test, plaintiffs' air conditioner has a total motor horsepower output exceeding one horsepower. Under the Underwriters Laboratories' test the horsepower output was increased slightly over that shown by the ASRE test, while the ARI test made a further slight increase. The power supplied by the fan motor was additional. The total for both range from 1.16 to 1.41 horsepower.

The National Electrical Manufacturers Association, called NEMA, which publishes a loose-leaf book known as NEMA Standards Publications, Motors and Generators, established a standard for a condenser, such as plaintiffs, of less than one horsepower. Moreover, plaintiffs' attorney at the trial admitted that plaintiffs' units were manufactured and sold as three-quarter horsepower conditioners.

The assignment of a nominal horsepower rating to a particular motor model is made only by the motor manufacturer, not by the manufacturer of the compressor or of the finished air conditioner. Although the motor manufacturers have published NEMA standards as a guide to such ratings, they are not required to comply with these standards and feel free to depart from them. The manufacturers may assign to any motor such horsepower rating as they choose. The manufacturers of the motors in plaintiffs' air conditioners have assigned to such motors a horsepower rating of three-quarter horsepower.

The district court found, *inter alia:*

Among engineers, the horsepower of a motor does not mean its nominal horsepower rating, but means the actual horsepower which the motor will deliver continuously under its full normal load.

Under the 1948 ruling the Commissioner of Internal Revenue has consistently held that an air conditioning unit which has a total motor horsepower of one horsepower or more and a total cooling capacity of 10,000 or more B.T.U.'s per hour at ASRE conditions is not subject to federal excise tax. Under the 1954 ruling, the Commissioner has consistently held that an air conditioning unit of the motor-driven compressor type which has a total motor horsepower of one horsepower or more is not subject to federal excise tax.

█ The quoted sections of the 1939 and 1954 codes imposed a 10% tax on self-contained air conditioning units of the household-type. What is meant by "the household-type"? It is obvious that by his rulings the Commissioner has attempted to construe the Act in this regard. Inasmuch as the meaning of the statute must be ascertained, its construction is a legal function. As the Commissioner has undertaken to construe the language of the Act, we can examine his construction and determine its validity or invalidity. Miller v. Burger, 9 Cir., 161 F.2d 992, 994. As was said in Woods v. Benson Hotel Corporation, 8 Cir., 177 F.2d 543, 546:

" * * * But it must be as readily conceded that the construction of and interpretation of a statute as applied to justiciable controversies is a judicial function; and when administrative interpretation and judicial construction conflict, the latter must prevail. Woods v. Petchell, 8 Cir., 175 F.2d 202, 206."

█ In 82 C.J.S., Statutes § 359, p. 770, it is stated:

" * * * rules and regulations which are merely executive or administrative views as to the meaning and construction of the statute are not controlling on the courts, and cannot alter or extend the plain meaning of a statute, although they are entitled to great weight where the statute is ambiguous."

It is the duty of a court, where the language of a statute is susceptible of a construction which preserves the usefulness of a section, to give expression to the intendment of the law. Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 333, 59 S.Ct. 191, 83 L.Ed. 195.

The Commissioner's ruling would determine whether such air conditioners as those involved in this case are of the household-type by applying a test based upon the horsepower of the motors contained therein. It will be noted that the Act makes no reference to horsepower or motors. The horsepower test is irrelevant for that reason and also for the reason that a resort to that test opens up what the record shows is a field of confusion and controversy, involving, among other things, a serious question as to whether rated horsepower or actual horsepower is controlling. Against that background, the horsepower test is inconclusive and uncertain. It might well be that Congress purposely omitted any reference to the horsepower of household-type air conditioners, with full knowledge of the impracticability of using such a test.

■ It would appear that the Act unambiguously reaches and taxes self-contained air conditioning units of the household-type. There is no dispute about the meaning of this description, with the exception of the words "of the household-type". However, the latter words are not unusual, scientific, or words of art. We recently said, in United States Gypsum Co. v. United States, 253 F.2d 738, at page 744:

"It is well established that in interpreting the meaning to be given words used in legislative enactments the words are to be given their known and ordinary signification. The obvious, plain and rational meaning is preferable to a narrow, strained, or hidden meaning. * * * "

■ An air conditioner is of the household-type when it is made to meet the needs of a household. If a housewife enters a store of an air conditioner dealer and expresses a desire to buy an air conditioner for her home,[8] she will be furnished with an air conditioner of the household-type, i. e. one adapted to the home space which she seeks to air condition. Such an air conditioner is the type mentioned in subparagraph (c) of the sections of the code now under discussion. Those were the air conditioners upon which Congress laid the 10% tax. Neither the rated, nor actual, motor horsepower of such air conditioners is of any moment here. That these air conditioners might be used for other than household purposes is immaterial. The rulings of the Commissioner, insofar as they are not in conformity with these views, are void.

For these reasons, plaintiffs are not entitled to recover in this case and the judgment of the district court is reversed.

Reversed.

8. An air conditioner purchased from Mitchell by Thomas Carlin was for his home, where it was used. An air conditioner purchased from Cory by Keith McKy was for his brother's home and was so used.