CORY CORPORATION ET AL. *v.* SAUBER.

No. 436. Argued May 16, 1960.—Decided June 20, 1960.

*Edwin A. Rothschild* argued the cause for petitioners. With him on the brief was *Stanford Clinton.*

*Howard A. Heffron* argued the cause for respondent. With him on the brief were *Solicitor General Rankin, Assistant Attorney General Rice* and *Grant W. Wiprud.*

PER CURIAM.

This suit was instituted by petitioners in the District Court for a refund of excise taxes collected on the sales of two air-conditioning units sold in 1954 and 1955. Section 3405 (c) of the Internal Revenue Code of 1939, 26

U. S. C. (1952 ed.) § 3405 (c), placed a 10% tax on "[s]elf-contained air-conditioning units." [1] Section 3450 gave the Commissioner, with the approval of the Secretary, power to prescribe needful rules and regulations for the enforcement of the provisions relating to such taxes. Pursuant to this power, the Commissioner published revenue rulings in 1948 [2] and in 1954 [3] holding that the statute taxed air-conditioning units which had certain physical features, were designed for installation in a window or other opening and had "a total motor horsepower of less than 1 horsepower." These rulings represented the Commissioner's construction of the Act until a different construction, applied prospectively only, was expressed in regulations issued in 1959. [4]

The parties stipulated that the statute applied only to "self-contained air conditioning units of the household type" and that each of the two units in question had an actual motor horsepower of one horsepower. The taxpayers contended that the words "motor horsepower" in the revenue rulings meant actual horsepower; the Government contended that they meant the nominal horsepower given by the manufacturer or "rated" horsepower assigned on the basis of standards established by trade associations. The District Court construed the revenue rulings as referring to actual, not nominal or rated, horsepower and found, in accordance with the stipulation, that each of the two units had an actual horsepower in excess of one horsepower. It found additionally that even the "rated" horsepower of the two units in question was greater than one horsepower. On appeal the Court of Appeals re-

---

[1] This was re-enacted in § 4111 of the 1954 Code, 26 U. S. C. § 4111.

[2] S. T. 934, 1948–2 Cum. Bull. 180.

[3] Rev. Rul. 54–462, 1954–2 Cum. Bull. 410.

[4] This test of horsepower was excluded from the Treasury Regulations promulgated in 1959 under the 1954 Code by T. D. 6423, 1959–2 Cum. Bull. 282.

versed. 266 F. 2d 58, 267 F. 2d 802. It did not reach the question as to the meaning of the revenue rulings, for it held that "household type" was the controlling statutory criterion, that the horsepower of the units is irrelevant to that issue, that the units in question were clearly of the household type because they were "made to meet the needs of a household," and that the revenue rulings, insofar as they referred to horsepower, were therefore void. The case is here on petition for a writ of certiorari, 361 U. S. 899.

There is much said in the briefs and in oral argument about this case as a test case. It is said that taxes on the sale of about 50,000 units turn on this decision. We intimate no opinion as to the taxes on any sales except the two involved here. The only issues before the Court are the construction and validity of the revenue rulings. Hence we do not reach the question as to what other defenses might have been made. Respondent urges in this Court, contrary to the stipulation below, that the statute taxes all self-contained air-conditioning units, not merely those of the household type. We need not consider which view of the statute is correct for under either view we think the horsepower test is a permissible one. We hold that the revenue rulings which were in force from 1948 to 1959 [5] were not void. The factor of horsepower in our opinion may have had some relation to size in the then stage of engineering development and size might well have been relevant to what was then a "self-contained air-conditioning unit." There is indeed evidence that the less-than-one-horsepower test was designed to draw the line between household and commercial types of air-conditioning equipment. Moreover, it appears that the rulings in question were issued after consultation with industry representatives, who asserted that horsepower was a

---

[5] See notes 2 and 3, *supra*.

factor relevant to the definition of the statutory term as they understood it. The Commissioner consistently adhered to the horsepower test for more than 10 years, and Congress did not change the statute though it was specifically advised in 1956 that that was the test which was being applied.[6] We cannot say that such a construction was not a permissible one, cf. *Universal Battery Co.* v. *United States,* 281 U. S. 580, especially where it continued without deviation for over a decade. Cf. *United States* v. *Leslie Salt Co.,* 350 U. S. 383. The District Court found that "Among engineers, the horsepower of a motor does not mean its nominal horsepower rating but means the actual horsepower which the motor will deliver continuously under its full normal load."

The Court of Appeals did not reach that question nor review that finding in view of its conclusion that the horsepower test was not valid. Accordingly we remand the case to the Court of Appeals for consideration of that and any other questions which may remain. And we add that our disposition is without prejudice to such action as the lower courts may deem appropriate to prevent taxpayers, should they ultimately prevail, from obtaining a windfall by reason of taxes collected by them but not paid to the Government.

*Reversed.*

Mr. Justice Frankfurter, dissenting.

I would dismiss the writ of certiorari as improvidently granted.

The petition urged the substantial question of retroactivity in the Commissioner's exercise of his lawmaking power, in that he attacked in court a prior interpretation by him of the taxing statutes whereby the tax now claimed

---

[6] Hearings, Subcommittee, House Ways and Means Committee on Excise Taxes, 84th Cong., 2d Sess. 163–165.

was not due. As the case finally was presented here no substantial question of retroactivity was presented. Insofar as the retroactivity initially asserted depended upon the reliance of the petitioners, that is apparently governed by § 1108 (b) of the Revenue Act of 1926, 44 Stat. 114, controlling excise taxation, and is in any event not now in issue, for the petitioners stipulated in the trial court and reiterated here that the Commissioner was in no way "estopped" to attack the invalidity of the ruling as petitioners and the District Court construed it. Insofar as the retroactivity asserted was the more general unfairness of a change in the Commissioner's interpretation, it cannot be presented in this case because from the start it has been manifest that the ruling is, to say the least, ambiguous (the Commissioner tried to clarify it in 1957) and reasonably susceptible of both interpretations urged for it, so that any judicial determination of its meaning was bound to affect some taxpayers retroactively. Nor was or is there any basis in the record for saying that the Court of Appeals' rejection of the horsepower test *in toto* was more severely retroactive in its effect than either construction of the ruling might have been.

The only other contention presented for review is the substantive statutory determination of the Court of Appeals, as to which that court apparently failed to give due weight to the interpretative function of the Commissioner. In light of the confused and cloudy record in this case, this failure cannot be said to be clearly presented since the Commissioner's approach has resulted in a rule which the Court of Appeals found to be "inconclusive and uncertain." Had all this been clear from the start, it would have been apparent, to me at least, that, assuming the Court of Appeals to be wrong, there was not such a departure "from the accepted and usual course of judicial proceedings . . . as to call for an exercise of this court's power of supervision." Rule 19, par. 1 (b).

Moreover, this litigation bears many of the earmarks of a feigned suit. Despite the desire of the parties to "test" a question of law, we ought to avoid adjudication in a case with so checkered a course of positions taken by the parties where the particular controversy may well be less than real. The consent required by § 6416 (a)(3) of the Internal Revenue Code of 1954, a precondition for this action, was obtained from the attorney and auditor of the petitioners. It is not too broad an inference to say that the petitioners were, in effect, writing their own consent for bringing this suit. Without further proof, such sales and consent hardly establish the immediate interest of the petitioners in the outcome of this lawsuit, *i. e.,* money loss due to an illegal exaction, not some other suit sought to be made to turn upon it, which is a requisite to adjudication. Cf. *Atherton Mills* v. *Johnston,* 259 U. S. 13, 15. Responsibility for the confusing shifts of position during litigation which characterize this record may not unfairly be attributed to the extent to which this action was contrived, and to the stipulations affecting the really substantial interests which were apparently the chief concern for using this action as a pilot litigation. Whether or not a case is feigned must ultimately turn on inferences from the record and history of a litigation. The appearance that it may be, even if not demonstrably calling for dismissal of the proceeding, ought to make the Court doubly unwilling to give its judgment on the substantive questions to be dug out of so dubious a litigation on such a record.

I would dismiss.

MR. JUSTICE CLARK, whom THE CHIEF JUSTICE and MR. JUSTICE BLACK join, dissenting.

The Congress, in 1941, levied an excise tax on "[s]elf-contained air-conditioning units." § 3405 (c), Internal Revenue Code of 1939. The legislative history shows that

the Congress intended the tax to "apply to all mechanical refrigerators and refrigerating units [including self-contained air-conditioning units] whether of household or other type." H. R. Rep. No. 1040, 77th Cong., 1st Sess., p. 32. In 1948, the Commissioner issued a ruling, reissued in 1954, which defined self-contained air-conditioning units as those with "a total motor horsepower of less than 1 horsepower."

This suit involves only two self-contained air-conditioning units, but by stipulation of the parties it is a "prototype or test" case to determine the extent of the coverage of the excise tax under § 3405 (c) as to self-contained air-conditioning units. Petitioners contend that "total motor horsepower" as used in the rulings meant actual horsepower rather than that for which the motor is rated by the manufacturer. It was stipulated that each unit had over one actual horsepower, but a manufacturer's rating of three-fourths horsepower. The Government contended that an interpretation that actual horsepower applied would make the rulings "fly in the face of the statute." It argued that the ruling should be interpreted "in [consonance] with the statute so as not to require the Court to strike down the ruling as a nullity and as something that is unreasonable, void, and of no effect." [1] This, the Government asserted, required that "total motor horsepower" be interpreted as manufacturer's rated horsepower. The trial court, however, enforced the rulings as requiring the application of the actual horsepower test. The Court of Appeals reversed, holding that the horsepower test was not permissible under the statute, and that the rulings were void.

The Government's contention that the statute covers all self-contained air-conditioning units is brushed aside by this Court with a finding that such a position is

---

[1] See R. pp. 130–132.

"contrary to the stipulation" which declares the statute restricted to units of the "household type." The Court finds that it "need not consider which view of the statute is correct for under either view we think the horsepower test is a permissible one." It holds that the rulings "were not void." Thus, despite the fact that § 3405 (c) refers solely to "[s]elf-contained air-conditioning units" and fails to mention "household type," the Court refuses to resolve this question of statutory construction raised by the Government. It simply remands the case to the Court of Appeals for a determination of whether the ruling meant by its language to refer to actual horsepower, as the District Court found, or to the manufacturer's rated horsepower as posted on the motor itself. I cannot see how any horsepower test under the rulings would be permissible, since it is not mentioned in the statute and is entirely inconsistent with the statute's full coverage. This test was formulated by the industry in meetings that culminated in a letter from the York Corporation to the Commissioner. This letter revealed that York considered the language "[s]elf-contained air-conditioning units" as used in § 3405 (c) to mean "exactly what the common everyday accepted usage of the term implies—the unit must be complete within itself." The suggested definition which York made was later promulgated in almost identical language by the Commissioner. York represented it to be "sufficiently broad in its scope to include without exception all self-contained air conditioning units which are now being manufactured." Petitioners admit that they were "at all times material hereto engaged in the manufacture and sale of self-contained air conditioning units." It is further admitted that the units involved here were self-contained ones, "in the sense that all the works are in the same box." They certainly came within the terms of § 3405 (c) as reflected in the York representations. If these representations brought about an

erroneous ruling inconsistent with § 3405 (c), then it is void and we should so declare it, as did the Court of Appeals.

Finally, these rulings do not have the force of regulations, and, as petitioners admit, they cannot "overrule a statute." However, if the manufacturer does not collect the tax on a sale because of his reliance on a ruling of the Commissioner holding the sale nontaxable, then "[n]o tax shall be levied, assessed, or collected" on that sale. § 1108 (b), Revenue Act of 1926.[2] It follows that if the petitioners did not collect the tax imposed by § 3405 (c) because of the Commissioner's rulings, no tax can now be levied or collected on the same. The Government specifically concedes that if respondents "had relied *to their detriment*—by treating as nontaxable the sale of units with an actual horsepower output of one or more [which is the interpretation placed on the ruling by petitioners and the trial court]—they would be protected [under § 1108 (b)] against any retroactive change in administrative position." Conversely, if the manufacturer did not rely on the rulings of the Commissioner and collected the tax under § 3405 (c), then he could not now interpose invalid rulings to bar the Government's recovery from him of the tax he has already collected.

In this connection, no one seems to know to what extent the tax has been collected by the industry. Petitioners now seem to admit that they made substantial collections, and the record discloses that other major manufacturers determined "taxability . . . by reference to rated

---

[2] § 1108 (b) of the Revenue Act of 1926, c. 27, 44 Stat. 9, 114:

"No tax shall be levied, assessed, or collected . . . on any article sold or leased by the manufacturer, . . . if at the time of the sale or lease there was an existing ruling, regulation, or Treasury decision holding that the sale or lease of such article was not taxable, and the manufacturer, . . . parted with possession or ownership of such article, relying upon the ruling, regulation, or Treasury decision."

horsepower, whether or not the actual horsepower was different therefrom." It therefore appears that large sums of money have been collected and are now being retained by the manufacturers. This case is based on only two units, purchased by persons connected with the petitioners. Under the stipulation, nevertheless, the result of this case will control the tax on some 50,000 other units not involved here. While the customers who paid the tax might sue the manufacturer therefor, the likelihood of such actions would be highly remote under the circumstances here.

Thus far the Government has received the tax only on the two units involved here. There are no "consents" save on these same two units—and these consents were obtained from a lawyer and an accountant of the tax-payers. The entire record and course of this litigation are cloudy, and the parties cannot even agree as to what they "agreed" upon in their stipulations. In light of these circumstances, I think it highly unfortunate that today the Court should enter an order which may permit the manufacturers to keep as a windfall considerable amounts they have charged their customers for "excise taxes."