(No. 38906.—

THE PEOPLE *ex rel.* Thomas W. Barrett *et al.*, Petitioners,
v. EDWARD J. BARRETT, County Clerk, Respondent.

*Decision announced October 5, 1964; Opinion filed October 21, 1964.*

KIRKLAND, ELLIS, HODSON, CHAFFETZ & MASTERS, of Chicago, for petitioner.

DANIEL P. WARD, State's Attorney, of Chicago, for respondent.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

Pursuant to leave granted, an original petition for a writ of *mandamus* was filed with this court on September 29. Because the issues related to judicial-retention ballots for the November 3 election, the cause was heard and determined as an emergency matter with an announcement of our judgment awarding the writ made following argument on the petition on October 5. The reasons supporting the judgment are herein set forth.

Petitioners are seven associate judges of the circuit court of Cook County who seek retention in office under the provisions of the Judicial Article of our constitution. (Const.

of Ill., art. VI, sec. 11.) While the petition alternatively requested proper positioning on voting machines of what is referred to as the "Associate Judges Retention Ballot", or separate paper ballots for those seeking retention, petitioners expanded their position on oral argument to attack the validity of the final paragraph of section 16—6.1 of the Election Code (Ill. Rev. Stat. 1963, chap. 46, par. 16—6.1,) which provides:

"16—6.1 Retention of judges in office—Separate ballot —Form.] § 16—6.1 In elections held pursuant to the provisions of Section 11 of Article VI of the Constitution relating to retention of judges in office, the form of the proposition to be submitted for each candidate shall be substantially as follows:

| Shall . . . . . . . . . . . . . . . . . . . . . . . (insert name of candidate) be retained in office as . . . . . . . . . . . . . . . . . . . . . . . (insert name of office and court) ? | YES | |
|---|---|---|
| | NO | |

"The names of all candidates thus submitting their names for retention in office in any particular judicial district, circuit, county or unit shall appear on the same ballot which shall be separate from all other ballots voted on at the general election.

"Such separate ballot shall be printed on paper of sufficient size so that when folded once it shall be large enough to contain the following words, which shall be printed on the back, 'Ballot for judicial candidates seeking retention in office.' Such ballot shall be handed to the elector at the same time as the ballot containing the names of other candidates for the general election and shall be returned therewith by the elector to the proper officer in the manner designated by this Act. All provisions of this Act relating to ballots shall apply to such separate ballot, except as otherwise specifically

provided in this section. Such separate ballot shall be printed upon paper of a distinctly different color from any other ballot used at such election.

"In precincts in which voting machines are used, separate ballots shall not be required if such voting machines permit the casting of votes on such proposition. Added by act approved Aug. 9, 1963. L. 1963, p. ——, H.B. No. 276."

The constitutionality of this statutory authorization for the use of voting machines to ballot upon candidates for retention in judicial office is therefore before us for decision. In the view we take of the matter, the positioning of petitioner's names upon the machines need not be considered.

The relevant constitutional provision appears in section 11 of article VI: "At the election the name of each judge who has filed such a declaration shall be submitted to the voters, on a *special judicial ballot* without party designation, on the sole question whether he shall be retained in office for another term." (Emphasis added.) It is apparent that the specific question for decision is as to the meaning of the phrase "special judicial ballot". We are of the opinion that its use in the context in which it appears requires a separate paper ballot for those judges seeking retention in office.

In reaching such conclusion it is pertinent to note the interpretation placed upon this constitutional language by the General Assembly in enacting legislation implementing the article. As previously noted herein, section 16—6.1 in part provides:

"The names of all candidates thus submitting their names for retention in office in any particular judicial district, circuit, county or unit shall appear on the same ballot which shall be separate from all other ballots voted on at the general election.

"Such separate ballot shall be printed on paper of sufficient size * * *. Such ballot shall be handed to the elector at the same time as the ballot containing the names of other candidates for the general election * * *. Such

separate ballot shall be printed upon paper of a distinctly different color from any other ballot  *  *  *."

It is therefore clear that in precincts using paper ballots, the judicial retention ballot must be a completely separate one containing only the statutory retention statements and names of the candidates for retention in addition to the statutory formalities common to all ballots. Inclusion of the candidates for retention in a separate column on a ballot containing the names of candidates for other offices would be a patent violation of the statute. The General Assembly having, in our judgment, correctly interpreted the constitutional language as divorcing the judicial retention ballot from all other election issues or candidates, the final paragraph providing for the use of voting machines would seem to be constitutionally impermissible. Where the expressed purpose of the constitutional language is, as here, to completely segregate an election question, it is as much beyond the power of the legislature to provide for its incorporation in different columns on the same voting machine with candidates for other public office as it would be to include such question in a separate column on the same paper ballot. The effect in either case is similarly contrary to the intent of the constitutional provision.

Lest this be thought to invalidate like provisions in section 16—7 permitting machine voting on questions relating to public measures, it should be pointed out that the discretion of the General Assembly is there unfettered by constitutional provisions similar to those here present. And it is likewise a matter of some interest that the constitutional requirements pertaining to ballots on constitutional amendments specifically permit inclusion of such proposals in a separate column on the regular ballot or their submission on a separate ballot (Const. of 1870, art. XIV, sec. 2). Had the drafters of the provision of the Judicial Article so intended, appropriate language presumably would have been used.

Also to be noted is the existence of a practical problem. While not of controlling importance, it is significant that the language of section 16—6.1 would afford support to the argument that the proposition

| "Shall . . . . . . . . . . . . . . . . . . . . . . (insert name of candidate) be retained in | YES | |
|---|---|---|
| office as . . . . . . . . . . . . . . . . . . . . . . (insert name of office and court) ?" | NO | |

be separately stated for each candidate for retention. Such is the interpretation given the statute by the Secretary of State as appears from exhibit B, the form of judicial retention ballot approved by his office. In the case before us, the problem originally arose because of a lack of adequate space upon the voting machines to include all candidates for retention in one column, although the proposition was stated only once at the head of the column as "Shall the following judges be retained * * *?". Serious question exists, considering the statutory language, as to the sufficiency of that form of ballot. If it is intended to require a separate statement concerning retention for each candidate, it is immediately apparent that substantially greater space would be necessary than was needed here, and the practical problem is compounded.

Our conclusion is also strengthened by the common rule of statutory construction that all language used must be given effect. Had the drafters of the Judicial Article not intended to require a completely separate ballot for those persons seeking retention in judicial office, the use of the word "special" in the phase "special judicial ballot without party designation" would appear unnecessary. It is a cardinal rule of statutory construction that significance and effect should, if possible, without destroying the sense or effect of the law, be accorded every paragraph, sentence, phrase and word. (50 Am. Jur. sec. 358.) A statute should be so con-

strued, if possible, that no word, clause or sentence is rendered meaningless or superfluous. *Peacock* v. *Judges Retirement System,* 10 Ill.2d 498, 501; *Consumers Co.* v. *Industrial Com.* 364 Ill. 145.

The result here reached is in accord with the widely advertised purpose of the Judicial Article, of which we may take judicial notice, to separate the judiciary and particularly those judges who seek retention in office, from the political realm.

We accordingly hold the provision of section 16—6.1 permitting the use of voting machines for the purpose of balloting upon candidates for retention in judicial office to be in conflict with the constitutional provision for a special judicial ballot. The writ of *mandamus* was therefore awarded, as heretofore ordered, commanding the respondent to prepare for use in the judicial-retention election to be held November 3, 1964, separate paper ballots containing, in the form transmitted to him by the Secretary of State, the names of circuit court judges, and associate judges of the circuit court outside the city of Chicago who seek retention in office.

*Writ awarded.*