CANADA PACKERS, LTD. *v.* ATCHISON, TOPEKA
& SANTA FE RAILWAY CO. ET AL.

No. 11. Argued November 8–9, 1966.—Decided December 5, 1966.

*Charles B. Myers* argued the cause and filed briefs for petitioner.

*Harvey Huston* argued the cause and filed a brief for respondents.

*Louis F. Claiborne,* by special leave of Court, argued the cause for the United States, as *amicus curiae.* On the brief were *Solicitor General Marshall, Assistant Attorney General Turner, Richard A. Posner* and *Robert B. Hummel. Leonard S. Goodman* argued the cause for the Interstate Commerce Commission, as *amicus curiae,* urging reversal. With him on the brief was *Robert W. Ginnane.*

PER CURIAM.

This case concerns the power of the Interstate Commerce Commission in reparations proceedings to determine the reasonableness of a joint through international freight rate. The American railroad respondents and their connecting carriers delivered 131 cars of potash from Carlsbad and Loving, New Mexico, to petitioner's

plants in Canada. Petitioner was charged and it paid a joint through international rate which it later attacked as unreasonable in a reparations proceeding before the Commission. Finding the rate to be unreasonable, the Commission ordered reparations in the amount of the difference between the rate charged and the rate which would have been reasonable at the time. Respondents refused to pay part of this amount on the theory that it represented an alleged overcharge for the Canadian leg of the trip over which the Commission had no jurisdiction under the applicable statute. This action followed in the District Court to collect the unpaid amount. The District Court found for the petitioner, the Court of Appeals reversed, 342 F. 2d 563, and we granted certiorari, 383 U. S. 906.

The provisions of the Interstate Commerce Act apply not only to transportation within the United States but to transportation from or to any place in the United States to or from a foreign country "but only insofar as such transportation . . . takes place within the United States." 24 Stat. 379, as amended, 49 U. S. C. § 1 (1). The Court of Appeals held that the Commission in this case was without jurisdiction to determine the reasonableness of freight rates for transportation taking place in Canada and hence was without power to order reparations with respect to the Canadian portion of the trip. The respondents and the United States, the latter differing with the Commission in this case, take a similar view. As an original matter there might·well be considerable merit in this position. But the contrary view of the Commission is one of long standing, see *Black Horse Tobacco Co.* v. *Illinois Central R. Co.,* 17 I. C. C. 588 (1910), and *Citizens Gas & Coke Utility* v. *Canadian Nat. Rys.,* 325 I. C. C. 527 (1965), and one which this Court has upheld on more than one occasion. *News Syndicate Co.* v. *New York Central R. Co.,* 275 U. S. 179, squarely held that where a carrier performing

transportation within the United States enters into a joint through international rate covering transportation in the United States and abroad, the Commission does have jurisdiction to determine the reasonableness of the joint through rate and to order the carrier performing the domestic service to pay reparations in the amount by which that rate is unreasonable. *Lewis-Simas-Jones Co.* v. *Southern Pacific Co.*, 283 U. S. 654, and *Great Northern R. Co.* v. *Sullivan,* 294 U. S. 458, are in accord. The Court of Appeals and respondents would distinguish these cases, but we think the differences relied on are insubstantial. Indeed, the United States quite candidly requests that we reconsider these older cases and so narrow the powers of the Commission with respect to joint through international rates. It is not shown, however, that the long-standing construction of the statute by both the Commission and this Court has produced any particularly unfortunate consequences and Congress, which could easily change the rule, has not yet seen fit to intervene. In these circumstances, we shall not disturb the construction previously given the statute by this Court, and the decision of the Court of Appeals must be

*Reversed.*

MR. JUSTICE DOUGLAS, dissenting.

An Act of Congress gives the Interstate Commerce Commission jurisdiction over transportation from or to any place in the United States to or from a foreign country "but only insofar as such transportation . . . takes place within the United States." 24 Stat. 379, as amended, 49 U. S. C. § 1 (1). How that can be read, "Whether or not such transportation . . . takes place within the United States" remains a mystery. *News Syndicate Co.* v. *New York Central R. Co.*, 275 U. S. 179, and *Lewis-Simas-Jones Co.* v. *Southern Pacific Co.*, 283 U. S. 654, actually decided something less.

In *News Syndicate* there was a through rate from a point in Canada to New York City; but the carrier had failed to establish a rate from the international border to New York City. The Court refused to let the jurisdiction of the Commission be defeated in that way and allowed it to determine the reasonableness of the through rate. 275 U. S., at 187. In the *Lewis-Simas-Jones* case the Court also emphasized that no tariff applicable "to the American part of the transportation of an international shipment on a through bill of lading" had been established "as required by the Act." 283 U. S., at 663. Those cases were explained in *Great Northern R. Co.* v. *Sullivan,* 294 U. S. 458, 462.

> "In each, shipments moved from an adjacent country into the United States on through rates made by joint action of the participating foreign and American carriers. The American carrier, having violated the Act by failure to file any tariff to cover its part of the transportation, collected freight charges found to be excessive and, as one of two or more joint tort-feasors, was held liable to the extent that the charges it exacted were in excess of what the commission ascertained to be just and reasonable. But here the charges collected were not excessive, and confessedly the same amounts lawfully might have been collected without injury or damage to plaintiff if only the connecting carriers had imposed the charges by means of 'joint' instead of the 'combination' through rates that they did establish."

In the present case rates from Carlsbad and Loving, New Mexico, to the Canadian border points had been established. 300 I. C. C. 87. The issues presented in *News Syndicate* and *Lewis-Simas-Jones* are therefore not offered here. *Stare decisis* is an important principle

in dealing with statutory law,[1] though even so we have not always placed "on the shoulders of Congress the burden of the Court's own error." *Girouard v. United States*, 328 U. S. 61, 70.[2]   As we said in *Toucey v. New York Life Ins. Co.*, 314 U. S. 118, 140–141:

"There is no occasion here to regard the silence of Congress as more commanding than its own plainly

---

[1] "The House of Lords no longer regards the reasoning in previous cases as sacrosanct.   Witness its striking departure in *Public Trustee v. Inland Revenue Commissioners* [[1960] A. C. 398] and *Midland Silicones Ltd.* v. *Scruttons Ltd.* [[1962] A. C. 446].   Those cases show that the House will not treat as absolutely binding any line of reasoning in a previous case which was not necessary to the decision: but will regard itself as at liberty to depart from it if convinced that it was wrong." *Penn-Texas Corp.* v. *Murat Anstalt* [1964] 2 Q. B. 647, 661.

And see [1966] C. L. Y. 9921:

"The Lord Chancellor made the following statement on July 26, 1966, on behalf of himself and the Lords of Appeal in Ordinary:

"Their Lordships regard the use of precedent as an indispensable foundation upon which to decide what is the law and its application to individual cases.   It provides at least some degree of certainty upon which individuals can rely in the conduct of their affairs, as well as a basis for orderly development of legal rules.

"Their Lordships nevertheless recognise that too rigid adherence to precedent may lead to injustice in a particular case and also unduly restrict the proper development of the law.   They propose therefore to modify their present practice and, while treating former decisions of this House as normally binding, to depart from a previous decision when it appears right to do so.

"In this connection they will bear in mind the danger of disturbing retrospectively the basis on which contracts, settlements of property and fiscal arrangements have been entered into and also the especial need for certainty as to the criminal law.

"This announcement is not intended to affect the use of precedent elsewhere than in this House."

See generally Cross, Stare Decisis in Contemporary England, 82 L. Q. Rev. 203 (1966).

[2] We have not been reluctant to reverse our own erroneous interpretation of an Act of Congress.   See, *e. g., Helvering* v. *Hallock*,

and unmistakably spoken words. This is not a situation where Congress has failed to act after having been requested to act or where the circumstances are such that Congress would ordinarily be expected to act. . . . To find significance in Congressional nonaction under these circumstances is to find significance where there is none."

And see *Helvering* v. *Hallock,* 309 U. S. 106, 119–122. Compare *Mabee* v. *White Plains Publishing Co.,* 327 U. S. 178, 185. Nor do we have here a precedent "around which, by the accretion of time and the response of affairs, substantial interests have established themselves." *Helvering* v. *Hallock, supra,* at 119.

Moreover, we need not be slaves to a precedent by treating it as standing for more than it actually decided nor by subtly eroding it in sophisticated ways. See Radin, The Trail of the Calf, 32 Cornell L. Q. 137, 143 (1946). It is enough that we do not approve "of the doctrinal generalization which the previous court used" (*ibid.*) and confine the precedent to what it actually decided. Certainly we should not extend the range of a precedent beyond its generating reason, especially when another policy, here the plain words of an Act of Congress, will be impaired by doing so.

I would affirm this judgment.

---

309 U. S. 106; *Nye* v. *United States,* 313 U. S. 33; *Toucey* v. *New York Life Ins. Co.,* 314 U. S. 118; *Commissioner* v. *Estate of Church,* 335 U. S. 632; *James* v. *United States,* 366 U. S. 213; *Smith* v. *Evening News Assn.,* 371 U. S. 195; *Local No. 438 Construction & General Laborers' Union* v. *Curry,* 371 U. S. 542, 552; *Fay* v. *Noia,* 372 U. S. 391, 435.