(No. 42042.—

UNITED AIR LINES, INC., Appellant, *vs.* GEORGE E. MAHIN
*et al.,* Appellees.

*Opinion filed April 1, 1971.—Rehearing denied October 4, 1971.*

46

Underwood, C.J., and Goldenhersh, J., specially concurring. Kluczynski, Schaefer and Davis, JJ, dissenting.

Robert L. Stern, Mark H. Berens, William Bruce Hoff, Jr., and William E. Doyle, all of Chicago, (Mayer, Brown & Platt, of counsel,) for appellant.

William J. Scott, Attorney General, of Springfield, (Francis T. Crowe and Calvin C. Campbell, Assistant Attorneys General, of counsel,) for appellees.

Gardner, Carton, Douglas, Chilgren & Waude, of Chicago, (James A. Velde, Joseph P. Carr and Gordon Lang, Jr., of counsel,) for *amici curiae* American Airlines, Inc., Braniff Airways, Incorporated, and Northwest Airlines, Inc.

Per curiam : United Air Lines, Inc., brought this action in the circuit court of Cook County to enjoin the Department of Revenue from assessing and collecting Illinois use tax on aviation fuel loaded at Chicago airports on planes of United which are about to embark upon, or to continue upon, interstate and foreign flights. Named as defendants were appropriate State officials and United's supplier, the latter having the burden of collecting the tax. Judgment was for defendants and United has appealed, being joined by American Airlines, Braniff Airways and Northwest Airlines, to whom we have granted leave to file briefs as *amici curiae*.

The Use Tax Act, which went into effect in August, 1955, (Laws of 1955, p. 2027,) imposes a tax on the privilege of using in this State tangible personal property that

was purchased elsewhere, and was designed to complement the Retailers' Occupation Tax Act, (Laws of 1933, p. 924,) under which a tax is imposed upon persons engaged in the business of selling tangible personal property to purchasers for use and consumption. It has been found to be constitutional (*Turner* v. *Wright*, 11 Ill.2d 161), and it is settled that the Use Tax Act was enacted for the valid purposes of preventing evasion of retailers' occupation tax by persons making out-of-state purchases of tangible personal property for use in Illinois, and of protecting Illinois merchants against diversion of business. At issue here, a matter of first impression, is the construction and application of that portion of section 3 of the Act which, from its inception in 1955, has provided for an exemption from the tax in these terms: "To prevent actual or likely multistate taxation, the tax herein imposed shall not apply to the use of tangible personal property in this State under the following circumstances: * * * (d) the temporary storage, in this State, of tangible personal property which is acquired outside this State and which, subsequent to being brought into this State and stored here temporarily, is used solely outside this State * * *." Ill. Rev. Stat. 1955, ch. 120, par. 439.3.

Conforming to a practice which has been essentially the same since May, 1953, United purchases and takes delivery of the aviation fuel in question from Shell Oil Company at facilities of the latter located in Hammond and East Chicago, Indiana. Thereafter, United transports it by common carrier pipeline and trucks to its underground storage facilities at O'Hare and Midway airports in Illinois. Fuel transported by pipeline is first placed in storage tanks at Des Plaines, Illinois, and from there, as needed, is piped to the underground facilities. It remains in the latter only so long as necessary for certain purification processes, and from there is pumped into the tanks of United's aircraft, almost always immediately prior to departure time. United

pays the tax on fuel used in intrastate flights, training flights and the like, and the dispute here relates only to fuel loaded on planes departing on interstate or foreign flights, United having 234 such flights each day. All of the aircraft involved must fly over specific routes prescribed by Federal aviation authorities, and thus the amounts of fuel consumed from the time the engines of the planes are started at the Illinois airports until they pass over Illinois borders can be determined with great accuracy.

From the record it appears that there were, and are, numerous common carriers, such as railroads, airlines and trucklines, which, like United, engaged in the practice of purchasing their fuel outside Illinois and storing it here prior to their use of it to propel equipment setting forth on interstate journeys. Immediately after the enactment of the Use Tax Act in 1955, the Department of Revenue uniformly and consistently interpreted and applied the Act to these carriers in such a manner that the incidence and measure of the tax was taken to be only that portion of the fuel consumed in or over Illinois. This construction has been commonly referred to as the "burn off" rule and, during the period of its application, provoked no amendatory legislation. Eight years later, on June 3, 1963, the Department abruptly changed its interpretation and issued a bulletin which announced:

"The Department's position is that temporary storage ends and a taxable use occurs when the fuel is taken out of storage and placed into the tanks of the airplane, railroad engine or truck. At this point the fuel is converted into its ultimate use, and, therefore, a taxable use occurs in Illinois.

"If a common carrier does not have separate facilities for transferring the fuel out of the State of Illinois but always puts it into the tank of the airplane, railroad engine or truck for final consumption, then they no longer will be able to give a certificate to the vendor stating that the fuel is purchased within the temporary storage provisions of the

Use Tax Act, but must pay the Use Tax to their supplier." In short, under this construction all fuel loaded on United's planes at the two airports was deemed to measure the tax, and the exemption in question was construed as having application only if the temporarily stored fuel is transported out of the state for use elsewhere by some means other than placing it in equipment which would consume it.

The present action, which for reasons not apparent in the record has been slow to progress, was soon initiated by United to enjoin the collection of the tax. In substance, it was the position of United that the new construction was erroneous and unreasonable, that the application of the Act as proposed contravenes the Illinois and Federal constitutions, and that it has no use tax liability incident to the fuel in controversy, or, alternatively, that it is liable only for tax measured by the amount of fuel burned in and over Illinois. The trial court rejected these contentions and United has renewed them here.

To support its contention that the "burn off" construction indulged in by the Department for 8 years should continue to prevail, United relies principally upon the rule of statutory construction that courts, in determining the proper construction of an ambiguous statute, will consider and give weight to the contemporaneous construction placed upon a statute by the governmental officers or departments charged with the duty of administering it, and will usually adopt such contemporaneous construction where it is a reasonably permissible construction, has the implied assent of the legislature, and has been consistent, uniform and long continued. (See: *People ex rel. Spiegel* v. *Lyons*, 1 Ill.2d 409; *Illinois Bell Telephone Co.* v. *Illinois Commerce Com.*, 414 Ill. 275; *United States* v. *Leslie Salt Co.*, 350 U.S. 383, 100 L. Ed. 441, 76 S. Ct. 416; *Cory Corp.* v. *Sauber*, 363 U.S. 709, 4 L. Ed. 2d 1508, 80 S. Ct. 1331.) For reasons later to appear, we do not believe the statute is ambiguous; but even if ambiguity be assumed, the rule of construction relied

upon cannot be employed in this case. As the rule itself recognizes, executive or administrative construction is not binding on the courts if it is erroneous (*P. H. Mallen Co. v. Department of Finance*, 372 Ill. 598; *Superior Coal Co. v. Department of Revenue*, 4 Ill.2d 459), and in our opinion the "burn off" construction is constitutionally impermissible.

That construction of the statute, to repeat, measured the tax by the amounts of fuel consumed by United's planes in and over Illinois as they proceeded on their interstate journeys. And while it is difficult to see how such a construction could be derived from statutory language which grants exemption to temporarily stored property that is used "solely outside of this State," it is sufficient to say that the construction runs afoul of the commerce clause of the United States constitution. Decisive and binding authority for this conclusion is found in *Helson* v. *Kentucky* (1929), 279 U.S. 245, 73 L. Ed. 683, 49 S. Ct. 279, determined under facts which, in effect at least, cannot be distinguished from those of the present case. Involved there was an Ohio river ferry operated exclusively in interstate commerce between Kentucky and Illinois. Gasoline used to power the ferry was purchased and delivered in Illinois, situs of the residence and business of the operator, and it was stipulated that "75 per cent of this gasoline was actually consumed within the limits of Kentucky, *but all of it in the making of interstate journeys.*" (279 U.S. at 248; emphasis added.) Issue arose when Kentucky sought to impose a tax on the gasoline consumed within its limits under a statute which, *inter alia,* authorized a tax on gasoline purchased "without the state" but used "within the state." Overruling Kentucky courts, the Supreme Court found under the circumstances that the gasoline was an instrumentality of interstate commerce, thus causing the tax to be "exacted as the price of the privilege of using an instrumentality of interstate commerce," (279 U.S. at 252,) and struck it down as

being an invasion of the exclusive power of Congress to regulate such commerce.

Our own statute must be held subject to the same infirmity when the amount of fuel consumed, or "burned off," within the limits of Illinois is made the incidence and measure of the use tax. All of the fuel over which controversy has arisen is consumed in the making of interstate journeys, and once the engines of a plane are started in Illinois, it can be said unequivocally that the fuel becomes an instrumentality of interstate commerce. Under the compulsion of *Helson,* to impose a tax based upon consumption within Illinois is to exact a tax on the privilege of using the fuel in interstate commerce. (*Cf. Shell Oil Co.* v. *State Board of Equalization,* 64 Cal.2d 713, 414 P.2d 820, 827; *Texas Gas Transmission Corp.* v. *Benson* (Tenn.), 444 S.W.2d 137; *W. R. Grace & Co.* v. *Comptroller of the Treasury,* 255 Md. 550, 258 A. 2d 740.) And there is more here than was involved in *Helson.* United's planes pass over many States. They do not refuel in each State, but fuel loaded here is necessarily used or consumed over and within each State. Should every State wherein fuel is consumed seek to impose a use tax measured by the amounts of fuel consumed within its borders, an intolerable burden on interstate commence would result. *Cf. United Air Lines, Inc.* v. *Illinois Commerce Com.,* 32 Ill.2d 516.

Seeking to avoid the impact of *Helson,* United argues that the placing and presence of the fuel in departing planes is but a continuation of temporary storage; that the burning of fuel in and over Illinois is simultaneously consumption and the termination of temporary storage, and that the release from storage as the plane is operated in Illinois is a local event, or use, properly taxable by Illinois. Or, to put it another way, United asserts that all fuel placed in the tanks of its planes continues to be exempt under the temporary storage provision of our Act, and that the exemption is lost,

and the fuel subject to the tax, only to the extent of the fuel released from the tanks for consumption in and over Illinois.

While we entertain grave doubts that *Helson* could be evaded by the fine distinction between "consumption" and "simultaneous consumption and termination from storage," and believe it probable that the fuel becomes an instrumentality of interstate commerce when it is loaded on a plane, the basic premise of the construction advanced is a faulty one. The placing and presence of the fuel in the tanks of aircraft may be "storage" in a special or technical sense, but we think it clear that the legislature did not intend for the temporary storage exemption to extend to "storage" of such nature. It is axiomatic that the words used in a statute should generally be given their plain and ordinary, or commonly accepted meaning, unless to do so would defeat the manifest intent of the legislature. (See: 34 I.L.P., Statutes, § 117.) Here the statutory references are to "the temporary storage, in this State," of tangible personal property, and to such property "stored here temporarily." The noun "storage" is specifically defined as meaning "the act of depositing in a store or warehouse for safekeeping" and, consistent therewith, the verb "store" is defined as meaning "to deposit in a store or warehouse for safekeeping." (See: Webster's New Twentieth Century Dictionary, 2d ed., pp. 1795 and 1796; *Bandosz* v. *A. Daigger and Co.*, 255 Ill. App. 494, 499.) It may be observed, too, that such meanings are consistent with the legislative purpose of exempting only temporarily stored property used solely outside Illinois. Fuel is not placed or present in the tanks of an airplane for the purpose of safekeeping, and there is no rule of construction which permits a court to say that the legislature did not mean what the plain language of a statute imports. (*Western National Bank of Cicero* v, *Village of Kildeer*, 19 Ill.2d 342.) Appropriate here, in light of United's effort to attribute a special or technical meaning to the language of

the Act, is the observation in *People* v. *Day,* 321 Ill. 552, 555, which states: "What the framers of a statute would have done had it been in their minds that a case like the one here under consideration would arise is not the point to be considered. The inquiry is what, in fact, they did enact, probably without anticipating the existence of such facts." We conclude that the "burn off" construction was improper and that it cannot prevail as United insists.

Next to be determined is the proper construction of the temporary storage provision of the Act and, in relation thereto, the positions and arguments of the parties focus upon *Edelman* v. *Boeing Air Transport, Inc.* (1933), 289 U.S. 249, 77 L. Ed. 1155, 53 S. Ct. 591. In that case the State of Wyoming imposed a tax on all gasoline used or sold in the State. Boeing, which operated out of two airports within the State, maintained an air service for transporting passengers, mail and express in interstate commerce. It purchased gasoline both within and without the State which was intermingled and stored in tanks at the airports from whence it was either sold or put into Boeing's own planes. Tax liability was admitted for the portions of the gasoline sold or used in intrastate flights, but, in apparent reliance on *Helson,* it was contended that the tax could not be validly applied to so much of the gasoline imported from outside the State as was loaded from the storage tanks into planes that consumed it in interstate flights. Rejecting this contention, the court said: "As the statute has been administratively construed and applied, the tax is not levied upon the consumption of gasoline in furnishing motive power for respondent's interstate planes. The tax is applied to the stored gasoline as it is withdrawn from the storage tanks at the airport and placed in the planes. No tax is collected for gasoline consumed in respondent's planes either on coming into the State or on going out. It is at the time of withdrawal alone that 'use' is measured for the purposes of the tax. The stored gasoline

is deemed to be 'used' within the State and therefore subject to the tax, when it is withdrawn from the tanks. * * * A State may validly tax the 'use' to which gasoline is put in withdrawing it from storage within the State, and placing it in the tanks of the planes, notwithstanding that its ultimate function is to generate motive power for carrying on interstate commerce. Such a tax cannot be distinguished from that considered and upheld in *Nashville, Chattanooga & St. Louis Ry.* v. *Wallace, supra.* [288 U.S. 249.] There it was pointed out that 'there can be no valid objection to the taxation of the exercise of any right or power incident to * * * ownership of the gasoline which falls short of a tax directly imposed on its use in interstate commerce, deemed forbidden in *Helson* v. *Kentucky,'* 279 U.S. 245. As the exercise of the powers taxed, the storage and withdrawal from storage of the gasoline, was complete before interstate commerce began, it was held that the burden of the tax was too indirect and remote from the function of interstate commerce, to transgress constitutional limitations." 289 U.S. 249, 251-252.

Our own statute defines a taxable "use" as being "the exercise by any person of any right or power over tangible personal property incident to the ownership of such property" (Ill. Rev. Stats. 1961 and 1969, ch. 120, par. 439.2), and it is the contention of defendants that a taxable use occurs when United withdraws its fuel from storage and places it in its planes. United agrees that either storage (*Wallace,* 288 U.S. 249), or withdrawal from storage (*Edelman*), are the exercise of rights which might have been constitutionally taxed under our Act. It insists, however, that our legislature waived the right to tax either event when it enacted the temporary storage provision, and from this position argues that if the loading on the aircraft is intended as the taxable event, then the tax is constitutionally improper as being imposed upon an integral activity of interstate commerce. (*Cf. Michigan-Wisconsin Pipe Line*

*Co.* v. *Calvert,* 347 U.S. 157, 98 L. Ed. 583, 74 S. Ct. 396; *Puget Sound Stevedoring Co.* v. *Tax Com.,* 302 U.S. 90, 82 L. Ed. 68; *Joseph* v. *Carter & Weekes Stevedoring Co.,* 330 U.S. 422, 91 L. Ed. 993; *Richfield Oil Corp.* v. *State Board of Equalization,* 329 U.S. 69, 91 L. Ed. 80.) But both parties, in our view, oversimplify the problem by failing to consider the specific language of the Act, which we are bound to construe so that all of its provisions are given effective meaning. *People ex rel. Barrett* v. *Barrett,* 31 Ill.2d 360; *Pliakos* v. *Liquor Control Com.,* 11 Ill.2d 456.

In language which we find to be plain, simple and unambiguous, the Act has granted exemption to "the temporary storage, in this State, of tangible personal property which is acquired outside this State and which, subsequent to being brought into this State and stored here temporarily, *is used solely outside this State."* (Emphasis added.) Exemption is thus granted only as to tangible personal property which is stored here temporarily and which, upon withdrawal from storage, is to be used solely outside Illinois. To put it another way, the legislature has stated that the temporary storage and the withdrawal therefrom are not taxable uses, if the property in question is to be used solely outside the State. It is clear that if United was to withdraw its fuel from storage at Des Plaines and the airports and transport it outside the State for use elsewhere, as for example at an airport in nearby Wisconsin, the exemption would apply and neither the storage, nor the withdrawal, nor the transportation of the fuel outside the State would be uses subject to the tax. But United does not store in Illinois with any intention that the fuel will be used solely outside this State. Rather, the fuel is stored here only to facilitate United's operations from the O'Hare and Midway airports within the State. Under the circumstances, the "storage" becomes something more than a "temporary storage" for safekeeping prior to its use solely outside of Illinois. Such storage, under the plain words of the statute, does

not qualify under the temporary storage exemption and, as the authorities already discussed reveal, either the storage itself or the withdrawal therefrom are uses which may be taxed without offending the commerce clause of the Federal constitution.

Contention is next made that the Department, in applying the tax, has done so in such a manner as to violate the provision of section 1 of article IX of the Illinois constitution which requires taxation to be "uniform as to the class upon which it operates." However, there is no proof in this record that there has been a lack of uniformity or discrimination within the class of taxpayers affected, and as a consequence there is nothing which permits us to determine the issue sought to be raised. It may be added, too, that this contention is erroneously premised on a theory that the fuel stored by United is eligible for the protection of the temporary storage exemption, and that the tax has been laid on either the withdrawal of the fuel from storage or its transportation outside the State. In either event, the constitutional claim made must be found to be without merit.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*

Mr. CHIEF JUSTICE UNDERWOOD specially concurring:

I agree that Illinois may constitutionally collect the tax imposed in this case on all of the fuel loaded on United's planes at the airports. I am, however, not at all certain that application of the "burn off" rule would, as the opinion indicates, be constitutionally impermissible if the statute so provides. In my opinion the statute does not so provide, but rather clearly exempts the fuel in question here only when "used solely outside this State". I do not consider discussion of the "burn off" rule necessary to the decision, and would affirm on what I consider to be the plain meaning of the statutory language.

Mr. JUSTICE GOLDENHERSH joins in this concurrence.

Mr. JUSTICE KLUCZYNSKI, dissenting:

I disagree with the majority's conclusion that the interpretation of section 3 of the Use Tax Act (Ill. Rev. Stat. 1955, ch. 120 par. 439.3) as originally given by the Department of Revenue was erroneous and that such an interpretation would be violative of the commerce clause.

The events of storing fuel in Illinois or the taking of fuel from storage in Illinois are constitutionally taxable under our Act because the events are complete before interstate commerce begins. (*Nashville, Chattanooga & St. Louis Railway* v. *Wallace*, 288 U.S. 249, 77 L. Ed. 730, 53 S. Ct. 345; *Edelman* v. *Boeing Air Transport, Inc.*, 289 U.S. 249, 77 L. Ed. 1155, 53 S. Ct. 591.) Thus a tax measured by the value of the entire tank of fuel is constitutionally permissible and it follows that a tax measured by something less would also be permissible.

Section 3 of the Act in part provides: "To prevent actual or likely multistate taxation, the tax herein imposed shall not apply to the use of tangible personal property in this State under the following circumstances: * * * (d) the temporary storage, in this State, of tangible personal property which is acquired outside this State and which, subsequent to being brought into this State and stored here temporarily, is used solely outside this State * * *." (Ill. Rev. Stat. 1955, ch. 120, par. 439.3.) I believe that this section exempts that portion of the fuel which "stored here temporarily, is used solely outside this State." The intent of the owner when the fuel is placed in the tanks of the airplane is that a certain portion will be consumed in the State of Illinois. This portion is no longer exempt under section 3 and therefore taxable. The remainder of the fuel is stored in the tanks for use solely outside the State of Illinois and keeps its exempt status while in the tanks.

Such an interpretation was given to the exemption from its enactment in 1955 until June 3, 1963, when the Depart-

ment of Revenue changed its position so that a tax, measured by the value of the entire tank of fuel, is imposed when fuel is taken out of a storage tank and placed into tanks of the airplane. I believe, however, that the original construction given to the statute is correct for the following reasons: First, it is a reasonable construction of the wording of the exemption which admittedly is capable of other reasonable interpretations when applied to the facts of this case.

Secondly, the construction given to the statute at the time of enactment by the agency administering the statute is entitled to substantial weight. Before the Governor signed the Use Tax Act in July, 1955, the Department of Revenue, in response to an inquiry by the Honorable Paul Randolph (member of Illinois House of Representatives, Chairman of the Revenue Committee of the House and member of the joint House-Senate Conference Committee which recommended the Use Tax Bill for passage) stated in a letter to him its intent as to how it would administer the Act. The letter was written on July 12, 1955, by Willard Ice, then Supervisor, Rules and Regulations Division of the Department of Revenue, and stated that if a carrier purchased fuel outside of the State "and some of the items or units thereof (such as so many gallons of gasoline) are used in Illinois and some of the items or units thereof (such as so many gallons of gasoline) are used outside of Illinois, the carrier would be liable for the use tax on the items used in Illinois, but not on the items used outside of Illinois assuming that the carrier keeps adequate records to segregate the nontaxable from the taxable items."

Thirdly, the exemption as originally construed, had been applied continuously and uniformly for an extended period of time. And finally, during the eight years when the Department's original construction was in effect, the Illinois legislature amended section 3 of the Use Tax Act, at least

once each session without repudiating the Department's construction. Thus, the legislature gave implied consent to the construction by nonaction on its part. See: *Canada Packers, Ltd.* v. *Atchison, Topeka & Santa Fe Railway Co.*, 385 U.S. 182, 17 L. Ed. 2d 281, 87 S. Ct. 359; *Cory Corp.* v. *Sauber*, 363 U.S. 709, 4 L. Ed. 1508, 8 S. Ct. 1331; *United States* v. *Leslie Salt Co.*, 350 U.S. 383, 100 L. Ed. 441, 76 S. Ct. 416; *People ex rel. Spiegel* v. *Lyons*, 1 Ill. 2d 409; *Illinois Bell Telephone Co. v. Commerce Com.*, 414 Ill. 275.

For these reasons I would reverse the judgment of the circuit court of Cook County.

SCHAEFER and DAVIS, JJ., join in this dissent.