502 F.2d 1006
 Eileen RASULIS et al., Plaintiffs-Appellants,
v.
Caspar WEINBERGER, Secretary of Health, Education and
Welfare, Defendant-Appellee.*
*Consolidated with: McCoy, 74-1292; Liljestam, 74-1354;
Weinrich, 74-1369; Babcock,
74-1370; Thomas, 74-1372; Krass, 74-1373; Babcock, 74-1374;
Evans, 74-1389; and Rintz, 74-1399
v.
Weinberger.
 No. 74-1265.
 United States Court of Appeals, Seventh Circuit.
 Argued June 4, 1974.
Decided Sept. 9, 1974, Rehearing Denied Oct. 16, 1974.
 
 Eileen Rasulis, James J. McCoy, Harry B. Liljestam, Martin Weinrich, James Babcock, Michael Thomas, Florian Krass, Frederick D. Babcock, Winton Evans, Lillian F. Rintz.
 Appearing pro se.
 James R. Thompson, U.S. Atty., Gary L. Starkman and Robert A. Filpi, Asst. U.S. Attys., Chicago, Ill., for defendant-appellee.
 Before CLARK,* Associate Justice, CUMMINGS and TONE, Circuit judges.
 TONE, Circuit Judge.
 
 
 1
 This civil action was originally filed in 1970 by Eileen Rasulis, the owner and operator of a physical therapy clinic. Subsequently the case was consolidated with the nine similar actions, brought by physical therapists licensed by the State of Illinois, under the Illinois Physical therapy Act, Ill.Rev.Stat., Ch. 91, 22.1 et seq. (1973), which are before us in this consolidated appeal. The plaintiffs sought declaratory and injunctive relief against the Secretary of Health, Education and Welfare to prohibit him from giving any force or effect to 20 C.F.R. 405.1126(c) (1968) insofar as it made plaintiffs ineligible to treat patients in extended care and skilled nursing facilities and receive reimbursement therefore under the Medicare Act. (42 U.S.C. 1395, et seq.) Identical standards for hospitals (20 C.F.R. 405.1031) have also been challenged in plaintiffs' brief. The standards for physical therapists in all health care institutions are now consolidated in 20 C.F.R. 405.1101(q), the text of which, in relevant part, appears below.
 
 
 2
 On June 25, 1970, the District Court entered a preliminary injunction against enforcement of the regulation, on the ground that the regulation arbitrarily discriminated between physical therapists eligible to treat Medicare patients in hospitals and therapists eligible to treat Medicare patients in extended care facilities. In 1971, the Secretary promulgated an amended version of the regulation which applied across the board the requirements formerly restricted to extended care facilities. The complaints were amended to challenge the amended regulation. After a review of the amended version, the District Court found that the challenged sections were constitutional and in compliance with the Secretary's mandate from Congress, and entered summary judgment for the defendant. This appeal followed.
 
 
 3
 The regulation under attack establishes professional standards which physical therapists must meet in order to qualify for reimbursements under the Medicare Program. For a hospital or other health care institution to participate in the program, its personnel involved in the treatment of Medicare patients must qualify under the regulation. The standards applicable to therapists in all Medicare services after 1971, in the language of the regulation as it stood at the time of the District Court's decision, were as follows:
 
 
 4
 '405.1126 Condition of Participation-- Restorative Services--
 
 
 5
 '(c) Standard; Therapy Services.
 
 
 6
 '(1) Physical therapy is given or supervised by a therapist who meets one of the following requirements: '(i) He has graduated from a physical therapy curriculum approved by-- '(a) The American Physical Therapy Association; or '(b) The Council on Medical Education and Hospitals of the American Medical Association; or '(c) The Council on Medical Education of the American Medical Association in collaboration with the American Physical Therapy Association; or '(ii) Prior to January 1, 1966-- '(a) Has been admitted to membership by the American Physical Therapy Association; or '(b) Has been admitted to registration by the American Registry of Physical Therapists; or '(c) Has graduated from a physical therapy curriculum in a four-year college or university approved by a State department of education, is licensed or registered as a physical therapist, and where appropriate, has passed a State examination for licensure as a physical therapist; or '(iii) If he is currently licensed or registered to practice physical therapy pursuant to State law, he: '(a) Was licensed or registered prior to January 1, 1970, and has achieved a satisfactory grade through the examination conducted by or under the sponsorship of the Public Health Service; or '(b) Was licensed or registered prior to January 1, 1966, and prior to January 1, 1970, had 15 years of full-time experience in the treatment of illness or injury through the practice of physical therapy in which he rendered services upon order of and under the direction of attending and referring physicians; or '(iv) If trained outside the United States.'
 
 
 7
 Since the District Court entered its judgment, the regulation has been further amended, with a new section substituted for (iii)(a), but the changes do not affect the status of the plaintiffs or the material issues of this case.[1]
 
 
 8
 Although the plaintiffs, with the exception of plaintiff Rasulis, who is not herself a therapist, are licensed by the State of Illinois as physical therapists on the basis of training or experience equivalent to the formal educational and testing requirements of the state licensing act, Ill.Rev.Stat., Ch. 91, 22.9 (1973), they do not qualify under Regulation 405.1126(c) because they do not meet the educational or membership requirements of that regulation. To qualify under the regulation, they would have to pass a special examination. No examination is required of therapists who were members of the American Physical Therapy Association or were registered with the American Registry of Physical Therapists prior to 1966, regardless of their actual educational or other credentials.
 
 
 9
 The plaintiffs attack the regulation as an arbitrary and discriminatory exercise of the Secretary's rule-making authority under the Medicare Act violative of Fifth Amendment due process, and as inconsistent with the Secretary's mandate from Congress. They argue that the classification, insofar as it is based upon membership in the APTA or the ARPT, so imperfectly distinguishes the competent therapists from the incompetent that it must be struck down. Plaintiffs in essence demand that the Secretary admit as qualified to participate in the Medicare program any therapist licensed by any state. The Secretary, on the other hand, maintains that the regulation is reasonably designed to fulfill his duty to set such standards as are necessary to assure the health and safety of Medicare patients.
 
 
 10
 The Due Process Clause prohibits only those classifications within a Federal social welfare program that are patently arbitrary and totally lacking in rational justification. Flemming v. Nestor, 363 U.S. 603, 611, 80 S.Ct. 1367, 4 L.Ed.2d 1345 (1960). Accord, Gruenwald v. Gardner, 390 F.2d 591, 592 (2d Cir. 1968), cert. denied, 393 U.S. 982, 89 S.Ct. 456, 21 L.Ed.2d 445 (1968); Price v. Flemming, 280 F.2d 956 (3rd Cir. 1960), cert. denied, 365 U.S. 817, 81 S.Ct. 698, 5 L.Ed.2d 695 (1961). And '. . . regulation which is reasonable in relation to its subject and is adopted in the interests of the community is due process.' West Coast Hotel Co. v. Parrish,300 U.S. 379, 391, 57 S.Ct. 578, 581, 81 L.Ed. 703 (1937). See generally, Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), McGowan v. Maryland, 366 U.S. 420, 425-426, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961), Williamson v. Lee Optical of Oklahoma, 348 U.S. 483, 489, 75 S.Ct. 461, 99 L.Ed. 563 (1955).
 
 
 11
 The Medicare Act directs the Secretary to '. . . prescribe such regulations as may be necessary to carry out the administration of the insurance programs under this subchapter.' 42 U.S.C. 1395hh. While the quoted section does not authorize the Secretary to exercise control over the practice of medicine or the selection of employees by participating health care units (42 U.S.C. 1395), other sections of the Act do require that he make rules defining which institutions, agencies and persons are qualified to provide medical services to individuals entitled to insurance benefits under the program. 42 U.S.C. 1395a. Furthermore, in the sections of the Act which list the criteria for participation by hospitals, the Secretary is explicitly empowered to establish such additional requirements as he '. . . finds necessary in the interest of the health and safety of individuals who are furnished services in the institution.' 42 U.S.C. 1395x(e)(9), as amended in 1971. A similar provision is included among the requirements for nursing home participation. 42 U.S.C. 1395x(j)(15), as amended in 1971.
 
 
 12
 The challenged regulation does not stray outside the boundaries of permissible regulation. It merely provides standards for the dispensation of Federal funds. The economic incentive of participation in the Medicare Program does not constitute coercion or control. See Cardozo, J., for the Court in Steward Machine Co. v. Davis, 301 U.S. 548, 589-590, 57 S.Ct. 883, 81 L.Ed. 1279 (1937).
 
 
 13
 To guarantee that Medicare patients will receive competent professional care when using the services of a physical therapy clinic, it is reasonable for the Secretary to establish professional standards for therapists who wish to participate in the program. The qualification scheme of Regulation 20 C.F.R. 405.1126(c), offering several alternative methods by which therapists may qualify, is similar to many state medical and dental licensing statutes that have been consistently upheld against challenges on due process or equal protection grounds. See, e.g., Dent v. West Virginia, 129 U.S. 114, 123-125, 9 S.Ct. 231, 32 L.Ed. 623 (1889); Graves v. Minnesota,272 U.S. 425, 428-429, 47 S.Ct. 122, 71 L.Ed. 331 (1926). Educational requirements and proficiency examinations are time-tested means of assuring that practitioners meet minimum standards of competence.
 
 
 14
 It is also reasonable for the Secretary to rely on membership in a professional organization such as the APTA, which has long had its own educational requirements for admission, as another indicator of competence. That certain members of a class subject to a regulation may suffer greater economic loss than others does not render the regulation violative of due process if it is fair and equitable to the class as a whole. Bowles v. Willingham, 321 U.S. 503, 516-518, 64 S.Ct. 641, 88 L.Ed. 892 (1944). Thus, plaintiffs' Fifth Amendment rights are not violated by reason of the fact that they, but not all other prospective Medicare therapists, will be excluded from participation as health care providers unless they pass a required examination.
 
 
 15
 Nor is the fact that the Secretary has set January 1, 1966 as a licensing cut-off date an arbitrary or capricious action, as plaintiffs contend. Cut-off dates for 'grandfather' clauses are necessary to promote the professional upgrading of newly regulated professions, and have long been approved by the courts. See, e.g., Dent v. West Virginia, supra, 129 U.S. 114, 123-125, 9 S.Ct. 231, 32 L.Ed. 623 (1889). The choice of the specific date of January 1, 1966 is appropriate for a program due to become operative later in the same year.
 
 
 16
 In all respects, the Secretary of Health, Education and Welfare has promulgated a rational, reasonable regulation designed to protect the health and safety of Medicare patients. In affirming the District Court, we reach the same conclusion as did the Ninth Circuit in their recent order in Beringhele v. Weinberger (No. 73-2126, May 21, 1974).
 
 
 17
 Affirmed.
 
 
 
 *
 Associate Justice Tom C. Clark of the Supreme Court of the United States (Ret.) is sitting by designation
 
 
 [1]
 Under the amended regulations, effective February 19, 1974, the standard for qualification as a physical therapist is set forth in Section 405.1101(q):
 '(q) Physical therapist (qualified consultant): A person who is licensed as a physical therapist by the State in which practicing, and
 '(1) Has graduated from a physical therapy curriculum approved by the American Physical Therapy Association, or by the Council on Medical Education and Hospitals of the American Medical Association, or jointly by the Council on Medical Education of the American Medical Association and the American Physical Therapy Association; or
 '(2) Prior to January 1, 1966, was admitted to membership by the American Physical Therapy Association, or was admitted to registration by the American Registry of Physical Therapists, or has graduated from a physical therapy curriculum in a 4-year college or university approved by a State department of education; or
 '(3) Has 2 years of appropriate experience as a physical therapist, and has achieved a satisfactory grade on a proficiency examination approved by the Secretary, except that such determinations of proficiency shall not apply with respect to persons initially licensed by a State or seeking qualification as a physical therapist after December 31, 1977; or
 '(4) Was licensed or registered prior to January 1, 1966, and prior to January 1, 1970, had 15 years of full-time experience in the treatment of illness or injury through the practice of physical therapy in which services were rendered under the order and direction of attending and referring physicians; or
 '(5) If trained outside the United States, . . ..' 39 F.R.2240, et seq. (Jan. 17, 1974).