DR. JOHN T. MacDONALD FOUNDA-
TION, INC., d/b/a Doctors' Hospital, a
Florida Corporation not for profit, Plain-
tiff-Appellant,

v.

F. David MATHEWS, Secretary of
Health, Education and Welfare, et
al., Defendants-Appellees.

No. 75–2966.

United States Court of Appeals,
Fifth Circuit.

July 2, 1976.

**634**

Aubrey V. Kendall, Charles C. Kline, Miami, Fla., for plaintiff-appellant.

Robert W. Rust, U. S. Atty., John S. Berk, Asst. U. S. Atty., Miami, Fla., Robert E. Kopp, Appellate Sec., Richard A. Olderman, Civil Div., Dept. of Justice, Washington, D. C., for defendants-appellees.

Before DYER, CLARK and GEE, Circuit Judges.

GEE, Circuit Judge:

The Dr. John T. MacDonald Foundation, Inc., doing business as Doctors' Hospital, brought this suit for declaratory and injunctive relief to require HEW to reopen and recompute final administrative determinations of the Medicare program reimbursement due the hospital under Title XVIII of the Social Security Act, 42 U.S.C. § 1395, et seq. (1974), for the years 1967 through 1972. During those years, Doctors' Hospital generated between $100,000 and $150,000 annual revenue by leasing its radiology department to a group of radiologists. HEW maintains that the hospital's Medicare reimbursement for those years must be reduced by the revenue from this lease; it relies on regulations set forth in 20 C.F.R. § 405.486(b)(1) (1974). Doctors' Hospital maintains that the radiology depart-ment is not one of the departments of the hospital and that profits from its lease ought not reduce allowable costs generated by all other hospital departments. The district court granted summary judgment for defendants. We reverse, finding that HEW has misinterpreted its own regulation.

## I. *Jurisdiction*

We must first determine if the district court had jurisdiction to hear this suit. 42 U.S.C. § 405(h), expressly made applicable to the Medicare program by 42 U.S.C. § 1395ii, provides:

> The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 41 of Title 28 to recover on any claim arising under this subchapter.

HEW asserts that § 405(h) precludes jurisdiction of the district court under 28 U.S.C. § 1331 and under the Administrative Procedure Act, § 10. The Second Circuit has interpreted § 405(h) to preclude judicial review only if the Medicare Act establishes some procedures for review of the Secretary's decision. *Kingsbrook Jewish Medical Center v. Richardson*, 486 F.2d 663, 666–68 (2d Cir. 1973); *Aquavella v. Richardson*, 437 F.2d 397, 402 (2d Cir. 1971); *Cappadora v. Celebrezze*, 356 F.2d 1 (2d Cir. 1966) (interpreting § 405(h) under the Social Security Act). Our court has adopted this reading of § 405(h):

> Where an act provides procedures for judicial review, a court cannot review an agency decision by any other means; where the act does not provide such procedures, however, "nonstatutory" review is still available.

*Ortego v. Weinberger,* 516 F.2d 1005, 1009 (5th Cir. 1975), *citing Aquavella v. Richardson, supra.*[1] It is conceded that the Medicare Act does not provide for judicial review of the order in question in this case.[2]

■ HEW contends that the Supreme Court decision in *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), nullifies the *Ortego* view of § 405(h). *Salfi* found that § 405(h) barred § 1331 jurisdiction of a constitutional challenge to the requirement that a widow and stepchildren must have been related to a wage earner nine months prior to his death to claim survivor benefits under the Social Security Act.[3] This strict interpretation of § 405(h) in *Salfi* where judicial review was possible under § 405(g) does not overrule our holding in *Ortego* that where no review procedures are provided jurisdiction exists under § 10 of the APA.[4] As we noted in *Lejeune v. Mathews,* 526 F.2d 950 (5th Cir. 1976), *Salfi* was considered by the judges who wrote *Ortego,*[5] and we are bound by their construction of *Salfi.*

Any language in the *Salfi* majority opinion which seems to characterize § 405(g) as an exclusive source of jurisdiction over Social Security cases must be read in the proper context. The claims over which review was sought in *Salfi* were ones which could be reviewed judicially, after proper procedures were followed within the agency, under § 405(g). Decisions of the Secretary which can be reviewed judicially under § 405(g) can be reviewed judicially *only* under § 405(g). § 405(g) affords no jurisdiction over the Secretary's refusal, without a hearing, to reopen on the basis of new evidence a determination of ineligibility. *Salfi* did not discuss decisions of this type, and, as stated in *Ortego, Salfi* "gave no consideration to review of 'final agency action' pursuant to the terms of Section 10 of the Administrative Procedure Act." 516 F.2d at 1011 n. 4. *See also Sanders v. Weinberger, supra,* 522 F.2d at 1171. *Salfi* does not require us to hold that a refusal to reopen is a decision irretrievably committed to agency discretion. *Ortego,* decided after *Salfi,* requires us to hold otherwise.

*Lejeune v. Mathews,* 526 F.2d 950, 953 n. 2 (5th Cir. 1976). The law of this circuit, then, is that § 405(h) is not an absolute bar

1. It should be noted that the Second Circuit's doctrine interpreting § 405(h) was decided under a due process challenge; however, *Ortego* did not involve any constitutional challenges, and therefore this distinction should not bar jurisdiction in this case, which brings no constitutional challenge.

2. Congress amended the Act to establish a Provider Reimbursement Review Board to determine controversies between a provider and an intermediary concerning the amount of reimbursement, but the amendment is effective only for accounting periods ending on or after June 30, 1973. 42 U.S.C. § 1395*oo* (Supp. III, 1970),

3. It should be noted, however, that at the same time that it interpreted § 405(h) strictly, the Court rendered a loose interpretation of § 405(g) to allow judicial review under that provision. This same approach was followed in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18, 44 U.S.L.W. 4224 (1976), which refused to find in *Salfi* a bar to § 405(g) jurisdiction of an action seeking review of a

decision of the Secretary of HEW to determine disability benefits under the Social Security Act.

4. *Accord Sanders v. Weinberger,* 522 F.2d 1167 (7th Cir. 1975) (district court had jurisdiction, under the APA, to review for abuse of discretion a refusal to reopen the determination of ineligibility for Social Security benefits).

5. The effect of *Salfi* on this jurisdictional question was also considered in *Sanders v. Weinberger, supra,* 522 F.2d [1167] at 1171 (7th Cir. 1975). The Secretary petitioned the *Ortego* panel for rehearing, presenting the same arguments based on *Salfi* which he now urges here. The petition was denied 516 F.2d 1005 (5th Cir. 1975). These arguments were also presented to the Seventh Circuit in a petition for rehearing *en banc* in *Sanders,* which petition was also denied. 522 F.2d 1167 (7th Cir. 1975).

*Lejeune v. Mathews,* 526 F.2d 950, 953 n. 1 (5th Cir. 1976).

to jurisdiction under the APA to review refusals of the Secretary to reopen decisions otherwise unreviewable.[6] Relying on Ortego and Lejeune, we find the district court had jurisdiction under § 10 of the APA to hear this action.

## II. Reimbursement

When an individual covered by Medicare is hospitalized, the hospital insurance program pays to the hospital the reasonable cost of its services, and the medical insurance program pays the attending physician the reasonable charges for his services. When a "hospital-based physician" leases space from the hospital and assumes the costs of operation of a certain department of the hospital, Medicare should not pay twice for the same hospital services—once to the hospital and again to the physician, whose fees will now include the operating costs of the hospital department. 20 C.F.R.

§ 405.486(a) establishes that in the case of a "hospital-based physician" payment for hospital services will be made only to the doctor through the medical insurance program. 20 C.F.R. §§ 405.486(b)(1) and (2) both deal with how to calculate reasonable charges of the hospital-based physician; the stated objective is to "bring about as little change as possible (in the normal case) in the compensation the physician receives for his services in the hospital." 20 C.F.R. § 405.486(b)(1) (1974).

Doctors' Hospital leased out its radiology department, providing certain services (i. e., operating costs), such as utilities and janitorial services. The radiology department handled its own billing. The amount paid by the radiologists to the hospital exceeded operating expenses, netting the hospital a profit of $100,000 to $150,000 in each year from 1967 to 1972.[7] The Secretary of HEW relied on the following portion of 20 C.F.R.

6. In two similar cases seeking to reopen and recompute Medicare reimbursements under the medical insurance program, the Eighth Circuit has interpreted Salfi as a bar to jurisdiction under § 1331 and under § 10 of the APA. St. Louis Univ. v. Blue Cross Hosp. Serv., 537 F.2d 283 (8th Cir., 1976); Faith Hosp. Ass'n v. Blue Cross Hosp. Serv., 537 F.2d 294 (8th Cir., 1976). In rejecting jurisdiction under the APA, the Eighth Circuit found that the amount of reimbursement under the medical insurance program had been committed to agency discretion and therefore was not reviewable under the APA. 5 U.S.C. § 701. We are here dealing with the amount of reimbursement under the hospital insurance program. We rely on the amendment establishing a Provider Reimbursement Review Board, supra n. 2, as evidence that Congress did not intend to commit such decisions to agency discretion.

We do not here decide if jurisdiction under § 1331 survives Salfi. In Ortego, the court rejected § 1331 jurisdiction not because of Salfi but because the jurisdictional amount was not met. However, a footnote in Lejeune, discussing Salfi, intimates that § 1331 "is expressly negated as a possible source of jurisdiction by the third sentence of § 405(h)." Lejeune v. Mathews, supra at 953 n. 2. This may be true, but we note that in Salfi review was sought under § 1331 for an order that was reviewable under § 405(g), and this holding does not necessarily bar an action under § 1331 in a provider reimbursement dispute that is not otherwise reviewable.

7. The three radiologists made lease payments of $13,500 annually and under a royalty agreement paid the hospital a percentage of the gross receipts. This arrangement produced the following revenues and expenditures for the years 1967 through 1972:

| Year | Revenues From Lease and "Royalty Agreement" | Expenses Incurred in Operation of Radiology Department | Net Income To Hospital From Radiology Department |
|---|---|---|---|
| 1967 | $129,227.60 | $29,617.00 | $ 99,610.00 |
| 1968 | 151,011.04 | 30,253.00 | 120,758.04 |
| 1969 | 165,490.00 | 33,323.00 | 132,167.00 |
| 1970 | 200,896.00 | 50,998.00 | 149,898.00 |
| 1971 | 161,134.00 | 49,978.00 | 111,156.00 |
| 1972 | 161,133.00 | 54,789.00 | 106,344.00 |

§ 485.486(b)(1)[8] to claim that reimbursement due the hospital for services provided by its other departments should be reduced by the profit from the radiology department:

> Where, however, a hospital initially pays some or all of the operating expenses of a hospital department (e. g., pays the salaries of nonprofessional personnel and purchases supplies and equipment), even though subsequently those items and services for which it pays the operating expenses are furnished for the use of the physician in return for an agreed upon payment by the physician to the hospital, such operating costs are reimbursable under the hospital insurance program as hospital costs, and are not to be reflected in reasonable charges of the physician. Any payments received by the hospital under such an arrangement shall be treated as a reduction of allowable costs of the hospital reimbursable through the hospital insurance program.

 This regulation exists to insure that Medicare does not pay twice for the same operating costs. But this is not a case where Medicare paid twice. The hospital was never reimbursed for any operating expenses of the radiology department. Therefore, we cannot agree with HEW that § 405.486(b)(1) should be applied to reduce Medicare payments due to Doctors' Hospital. We read "initially pays" in the regulation to describe an outlay by the hospital that predates a "subsequent" leasing arrangement through which the physician assumes the operating costs. Such an initial outlay is a cost for which the hospital is reimbursed by Medicare; then if a subsequent lease payment by the physician reimburses the hospital for the same costs, *that* payment must be deducted from the hospital's allowable costs under the hospital insurance program. Such a deduction properly avoids double reimbursement to the hospital, once by Medicare and again by the physician. But Doctors' Hospital was never reimbursed for any operating costs of the radiology department and should not have to deduct any lease payments made by the physicians. This is the only interpretation of the language relied upon by HEW that meshes with the earlier portion of § 405.486(b)(1):

> Where the physician bills the patient directly, costs of operating the hospital department which are borne by the physician will be reflected in his reasonable charges which are compensable under the supplementary medical insurance program; the hospital will receive reimbursement through the hospital insurance program for those costs, if any, which it incurs.

---

**8.** The regulation in full provides:

The objective in determining reasonable charges where the physician bills patients directly is the same as that expressed in § 405.485(a); to bring about as little change as possible (in the normal case) in the compensation the physician receives for his services in the hospital. Where the physician bills the patient directly, costs of operating the hospital department which are borne by the physician will be reflected in his reasonable charges which are compensable under the supplementary medical insurance program; the hospital will receive reimbursement through the hospital insurance program for those costs, if any, which it incurs. Where, however, a hospital initially pays some or all of the operating expenses of a hospital department (e. g., pays the salaries of nonprofessional personnel and purchases supplies and equipment), even though subsequently those items and services for which it pays the operating expenses are furnished for the use of the physician in return for an agreed upon payment by the physician to the hospital, such operating costs are reimbursable under the hospital insurance program as hospital costs, and are not to be reflected in the reasonable charges of the physician. Any payments received by the hospital under such an arrangement shall be treated as a reduction of allowable costs of the hospital reimbursable through the hospital insurance program.

20 C.F.R. § 485.486(b)(1) (1974).

Medicare paid only the reasonable charges of the radiologists, although these charges were calculated to include the operating costs of the radiology department. What HEW complains of is that Medicare also paid in excess of $100,000 pure profit to the hospital each year because the physicians' fees necessarily included this expense, as well as the operating expenses. By allowing the doctors to charge enough to cover the cost of their lease, HEW complains that Medicare had to pay more than if it had separately paid the hospital under the hospital insurance program and the doctors under the medical insurance program.

Doctors' Hospital agrees that HEW should not pay for the hospital's pure profit, but it contends that § 405.486(b)(2),[9] which governs the manner of calculating reasonable charges for hospital-based physicians, spells out the proper way to avoid paying such profit.

The reasonable charges of a physician who enters into a lease or similar arrangement with a hospital under which the physician assumes the costs of operating the department and bills the patients directly would be based upon the remuneration he received for his services immediately prior to the leasing arrange-

ment plus his reasonable costs of operation, taking into account the hospital's cost experience in providing such services.

Thus, a hospital-based physician who pays his own operating costs can include his operating costs in calculating his fee, but his reasonable charge would be "actual cost" based on the hospital's cost experience, plus prior charges by a physician for similar services; it may not include money paid to the hospital in excess of actual operating costs.

HEW argues that C.F.R. § 405.486(b)(2), with its restriction on what can be paid to doctors under the medical insurance program, cannot control an operating expense that includes operating costs plus a profit to the hospital. The problem is that this regulation fails to distinguish between "operating costs," meaning the costs of providing services, and "overhead," the cost of the lease plus the price for obtaining a monopoly on radiology work in the hospital. To avoid § 405.486(b)(2), HEW argues that this section does not apply to the hospital-based physician whose lease includes a payment for operating costs, i. e., where the hospital pays the operating costs and is then repaid by the physician through his lease. To say that this physician is not paying his operat-

---

9. The regulation in full provides:

Where a hospital has been receiving, as its portion of the receipts for such services, significantly more or less than the costs the hospital has incurred in the provision of the services, this excess or shortage should not be transferred from the hospital to the physician merely because he decides to bill his patients directly. Since payment to the hospital is made on the basis of its reasonable costs for all hospital services, the transfer of such excess of shortage to the physician necessarily would alter the total cost of patient hospital and medical care—a result which the legislation was not intended to bring about. The reasonable charges of a physician who enters into a lease or similar arrangement with a hospital under which the physician assumes the costs of operating the department and bills the patients directly would be based upon the remuneration he received for his services immediately prior to the leasing arrangement plus his reasonable

costs of operation, taking into account the hospital's cost experience in providing such services. Reasonable charges, so determined, would be subject to appropriate future adjustment to take into account changing economic factors. Reference back to the remuneration formerly received by the physician from the hospital as a factor in determining his reasonable charges under the lease or similar arrangement is required to give effect to the provisions of the statute which direct that consideration be given, in determining reasonable charges, to the customary charges generally made by the physician for similar services. Where no pattern of customary charges has been established for the physician's professional services to patients other than the compensation he received from the hospital for his services, such compensation would serve as the basis for establishing the customary charge.

20 C.F.R. § 405.486(b)(2) (1974).

ing costs is to play games with words. The radiologists of Doctors' Hospital fit the description of hospital-based physicians, and HEW must rely on its regulation restricting the reasonable charges that can be paid such physicians. If C.F.R. § 405.486(b)(2) is not an effective check on the payment of excessive overhead as a component of a hospital-based physician's reasonable charges, then the Secretary of HEW must promulgate a regulation that will correct such excesses rather than torture the sense of those he has. As now written, the regulation does not permit the Secretary to snatch revenue from the radiology department out of the hospital's pocket after the money has left the doctors' hands. Nor may HEW apply C.F.R. § 405.486(b)(1), designed as a safeguard against double reimbursement of the same operating costs, to a hospital which received no reimbursement under the hospital insurance program for the operation of its radiology department.

Section 10(e) of the APA requires reviewing courts to

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

5 U.S.C. § 706 (Supp. II, 1967). We conclude that HEW abused its discretion in interpreting § 405.486(b)(1) to require a deduction in provider reimbursements. We reverse and order HEW to reopen and recalculate the amount of reimbursement due Doctors' Hospital for the years 1967 through 1972 in light of this opinion.

REVERSED.