The AMERICAN ASSOCIATION OF
COUNCILS OF MEDICAL STAFFS
OF PRIVATE HOSPITALS, INC.

v.

David MATHEWS.

Civ. A. No. 75–3061.

United States District Court,
E. D. Louisiana.

Oct. 12, 1976.

Roy F. Guste, William J. Guste, III, Charles D. Patten, III, Guste, Barnett & Shushan, New Orleans, La., for plaintiff.

Ford Dieth, Asst. U.S. Atty., New Orleans, La., for defendant.

HEEBE, Chief Judge:

Plaintiff brings this action against the Secretary of Health, Education, and Welfare (Secretary) for declaratory and injunctive relief from certain provisions of an instructional manual published by the So-

cial Security Administration, Department of Health, Education, and Welfare (HEW). The challenged provisions relate to utilization review requirements medical facilities must satisfy in order to participate in the federal medicare program established by subchapter XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.* Plaintiff alleges that the manual provisions at issue exceed the statutory authority granted to the Secretary by the Social Security Act, were promulgated in violation of the Administrative Procedure Act, and are unconstitutional. Defendant denies plaintiff's allegations and contends that we lack jurisdiction over the subject matter and that plaintiff lacks standing. The case is now before the Court on cross motions for summary judgment. We hold that plaintiff has standing to bring this action and that we have jurisdiction to hear it under Section 10 of the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* We further hold that on the merits summary judgment must issue in favor of defendant.

## BACKGROUND

In 1965 Congress enacted Title XVIII of the Social Security Act, commonly known as the Medicare program. 42 U.S.C. § 1395 *et seq.* This legislation establishes a federal reimbursement scheme for funding beneficiaries' covered health costs. Payment on behalf of these beneficiaries can only be made to "providers of services" defined in 42 U.S.C. § 1395x(u) as hospitals, skilled nursing facilities, and home health agencies. 42 U.S.C. § 1395f(a). In order to meet the definition of a hospital or skilled nursing facility within the term "provider of services", an institution must, *inter alia,* have in effect a utilization review[1] plan which meets the requirements of 42 U.S.C. § 1395x(k). Once an institution has met the definition of a provider of services it is qualified to participate in the Medicare program and is eligible to receive Medicare payments if it files an agreement with the Secretary as specified in 42 U.S.C. § 1395cc(a)(1). This agreement may be terminated by the Secretary when such an institution ceases to maintain a sufficient utilization review plan. 42 U.S.C. § 1395cc(b)(2).

Utilization review is conducted by committees the composition of which is prescribed by § 1395x(k). According to that section review apparently may be conducted by either a staff committee of the institution or by a group outside the institution.[2] The language of Section 1395x(k) is tracked by 20 C.F.R. § 405.1035(e),[3] promulgated by the Secretary pursuant to his authority to make and publish such rules and regulations as may be necessary to the efficient administration of the functions with which he is charged. 42 U.S.C. § 1395hh.

Plaintiff does not challenge the above statute and regulation which, plaintiff maintains, make staff and non-staff review committees equally available to hospitals. Instead, plaintiff's challenge is directed to the utilization review provisions of the State Operations Manual, also known as Health Insurance Manual 7 (HIM7).[4] HIM7 indicates a preference between the available options for composition of utilization review committees, to wit, review must be

1. Utilization review entails the review of admissions to an institution, the duration of stays therein, and the professional services furnished. The review committee evaluates the medical necessity of the admissions, stays, and care provided for the purpose of promoting the most efficient use of available health facilities and services. 42 U.S.C. § 1395x(k)(1).

2. 42 U.S.C. § 1395x(k) provides in pertinent part:
 (k) A utilization review plan . . . shall be considered sufficient . . . if it provides— . . .

 (2) for such review to be made by either (A) a staff committee of the institution composed of two or more physicians . . . or (B) a group outside the institution which is similarly composed . . .

3. 20 C.F.R. § 405.1035(e)(1) states:
 The utilization review function is performed by a staff committee of the hospital composed of two or more physicians . . . or by a group outside the hospital which is similarly composed . . .

4. HIM7 was issued by HEW in order to provide guidance to state agencies making determina-

conducted by a staff (in-house) committee where a facility has a sufficient number (two or more) of physicians on the house staff to serve on a utilization review committee. The utilization review function may be carried out by a non-staff committee only where the establishment of a staff committee is not feasible. Plaintiff deems this preference for staff review undesirable and invalid.

## JURISDICTION

Plaintiff alleges jurisdiction under 28 U.S.C. § 1331 (general federal question jurisdiction) and Section 10 of the Administrative Procedure Act, 5 U.S.C. § 701 et seq. The Secretary contends that 42 U.S.C. § 405(h) precludes jurisdiction under both § 1331 and the Administrative Procedure Act.

■ With regard to plaintiff's allegations of jurisdiction under § 1331 we are bound to follow Gallo v. Mathews, 534 F.2d 1137 (5th Cir. 1976). Gallo explicitly held that the Supreme Court's interpretation of § 405(h)[5] in Weinberger v. Salfi, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), precludes § 1331 jurisdiction in cases asserting any claim arising under the Medicare Act even

if that Act provides plaintiff with no route for judicial review of his claim.[6] Accordingly, we find that plaintiff lacks jurisdiction under § 1331.

■ We agree with plaintiff, however, that jurisdiction exists under the Administrative Procedure Act. In substance, that act provides courts with jurisdiction over a) agency action, b) which is final, c) which injures a person, and d) for which there is otherwise no adequate judicial remedy.[7] An "agency action" includes any "rule," defined as an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy. 5 U.S.C. §§ 551(4), 551(13). HIM7 clearly constitutes agency action within the meaning of the Administrative Procedure Act.

Neither is there any doubt that the promulgation, publication, and enforcement of HIM7 constitutes "final" agency action. National Automatic Laundry and Cleaning Council v. Schultz, 143 U.S.App.D.C. 274, 443 F.2d 689 (1971). See Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). The process of rulemaking is complete; the provisions of the manual are definitive.

---

tions as to the sufficiency of the utilization review plans of particular institutions.

5. 42 U.S.C. § 405(h), relating to Social Security claims but expressly made applicable to the Medicare program by 42 U.S.C. § 1395ii, provides in pertinent part:

 . . . No action against the United States, the Secretary, or any officer or employee thereof shall be brought under (28 U.S.C. § 1331 et seq.) to recover on any claim arising under this subchapter.

6. Salfi apparently held that § 405(h) on its face bars § 1331 jurisdiction, including constitutional challenges, in suits to recover Social Security benefits. Until Gallo, however, the Fifth Circuit had not decided whether § 1331 jurisdiction survived Salfi. While Lejeune v. Mathews, 526 F.2d 950 (5th Cir. 1976), intimated that it read Salfi's interpretation of the third sentence of § 405(h) to negate § 1331 as a possible source of jurisdiction, 526 F.2d at 953 n. 2, Dr. John T. MacDonald Foundation, Inc. v. Mathews, 534 F.2d 633 (5th Cir. 1976), without deciding the issue, disagreed indicating that it considered the issue unresolved. MacDonald noted that in Salfi review was sought for an order that was judicially reviewable under

§ 405(g). A decision that § 405(h) operates as an absolute bar to § 1331 jurisdiction was not necessary to the holding in Salfi, since the Court found jurisdiction under the Social Security Act. Therefore, until Gallo, it could have been argued that Salfi was entirely consistent with prior jurisprudence, e. g., Kingsbrook Jewish Medical Center v. Richardson, 486 F.2d 663, 667 (2d Cir. 1973), which held that review is available under § 1331 where the Medicare or Social Security Acts provide no procedure for judicial review. Plaintiff is now foreclosed from so arguing.

7. Section 10(a) of the Administrative Procedure Act, 5 U.S.C. § 702 provides:

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.

Section 10(c), 5 U.S.C. § 704, further provides:

Agency action made reviewable by statute and final agency action for which there is no adequate remedy in a court are subject to judicial review.

Plaintiff has alleged the requisite injury as is demonstrated in our discussion on *STANDING, infra.*

Finally, we conclude that plaintiff possesses no other adequate judicial remedy despite the Secretary's assertion that § 1395ff(c)[8] of the Medicare Act prescribes procedures for a hearing and for judicial review of plaintiff's claim. The pertinent part of section 1395ff(c) applies only to an institution or an agency dissatisfied with any determination by the Secretary that it is not a provider of services. Assuming the validity of the Secretary's argument that this motion concerns a determination of the status of certain hospitals as providers of services within § 1395ff(c), we nevertheless decide that plaintiff's claim is outside the purview of that section. The right to hearing and judicial review granted by § 1395ff(c) is limited to *institutions* or *agencies,* and is not available to plaintiff organization.

■ Defendant next contends that 42 U.S.C. § 405(h)[9] limits jurisdiction over Medicare claims to the jurisdictional grants contained in the Medicare Act and, thus, precludes jurisdiction under the Administrative Procedure Act.[10] This argument has been considered and rejected by the Fifth Circuit. The effect of § 405(h) on jurisdiction over Medicare claims under the Administrative Procedure Act has been settled in the Fifth Circuit since *Ortego v. Weinberger,* 516 F.2d 1005 (5th Cir. 1975). The *Ortego* court adopted relevant Second Circuit jurisprudence which concluded:

> Where an act provides procedures for judicial review, a court cannot review an agency decision by any other means; where the act does not provide such procedures, however, "nonstatutory" (Administrative Procedure Act) review is still available.

516 F.2d at 1009, *citing Aquavella v. Richardson,* 437 F.2d 397 (2d Cir. 1971).

■ As noted by *Ortego,* a presumption of reviewability exists under the Administrative Procedure Act. A statute must demonstrate clear and convincing evidence of an intent to preclude judicial review before courts will cut off an aggrieved party's right to be heard. *Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1976). Here, § 405(h) does not preclude such review because by its terms it applies only to determinations made after a hearing. As we have already noted, the Medicare Act provides no procedure for affording plaintiff a hearing on its claim.

The Secretary finally argues that *Weinberger v. Salfi, supra,* nullifies the *Ortego* view of § 405(h). We are not persuaded by this argument. *Salfi* was considered by *Ortego,* 516 F.2d at 1011 n. 4 and we are bound by the Fifth Circuit's interpretation of that case. Moreover, *Lejeune v. Mathews,* 526 F.2d 950 (5th Cir. 1976) also considered *Salfi* and found that decision to be inapposite to cases, such as this, where the Medicare Act provides plaintiff with no route for judicial review. *See also Dr. John T. MacDonald Foundation v. Mathews, supra.*

### STANDING

■ Standing under the Administrative Procedure Act is conferred upon those who can show that the challenged action

---

**8.** 42 U.S.C. § 1395ff(c) provides:

> Any institution or agency dissatisfied with any determination by the Secretary that it is not a provider of services . . . shall be entitled to a hearing thereon by the Secretary . . . to the same extent as is provided in section 405(b) of this title, and to judicial review of the Secretary's final decision after such hearing as is provided in section 405(g) of this title.

**9.** 42 U.S.C. § 405(h), provides in pertinent part:

> The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any tribunal . . . except as herein provided . . .

The remainder of § 405(h) is set out in note 5, *supra.*

**10.** Predictably, the judicial review provisions of the Administrative Procedure Act are inapplicable to the extent that statutes preclude judicial review. 5 U.S.C. § 701.

has caused them injury in fact, and that the alleged injury was to an interest arguably within the zone of interests to be protected or regulated by the statute that the agencies are claimed to have violated. *Sierra Club v. Morton,* 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972); *United States v. SCRAP,* 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973). An organization whose members are injured may represent those members in a proceeding for judicial review. 405 U.S. at 727, 92 S.Ct. 1361.

█ We find the complaint sufficient to establish the standing of plaintiff. *American Medical Association v. Weinberger,* 395 F.Supp. 515 (N.D.Ill.1975). The physician members of the American Association of Medical Councils allege that the utilization provisions of HIM7 unlawfully interfere with the doctor-patient relationship and the right of a physician to practice medicine according to his best medical judgment. Specifically, it is alleged that the conduct of the utilization review places the doctors in a conflict of interests with fellow members of their medical staffs. Utilization review requires the reviewing physicians to make decisions which cause patients of their fellow physicians to be discharged from the hospital prior to the time when the treating physicians would have discharged those patients. Additionally, plaintiff argues that physicians are taken away from their daily practice and the treatment of their patients in order to perform utilization review functions. These allegations assert perceptible harm within the meaning of *SCRAP,* supra.

Moreover, these allegations reflect interests arguably within the zone of interest sought to be regulated or protected. The Medicare Act was intended, in part, to improve the quality of medical care. If plaintiff's allegations are true the challenged provisions of HIM7 are preventing plaintiff's member physicians from rendering the medical care which they, in their professional judgment, deem necessary. Further-

more, Section 1801 of the Social Security Act, 42 U.S.C. § 1395, forbids any federal officer or employee from exercising any supervision or control over the practice of medicine. Plaintiff alleges that the challenged provisions embody supervision or control over the practice of medicine forbidden by the enabling statute.

## AUTHORITY OF THE SECRETARY

Plaintiff maintains that by promulgating HIM7 the Secretary exceeded the authority vested in him by Congress since the utilization review provisions of that manual contradict the language and intent of 42 U.S.C. § 1395x(k) and of 20 C.F.R. § 405.1035(e). Specifically, it is argued that the preference for in-house review manifested by HIM7 contradicts the statute and the regulation, neither of which contains any indication that staff committees are preferable to non-staff committees. We disagree.

█ As stated by the Supreme Court in *Mourning v. Family Publications Service,* 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973):

> The standard to be applied in determining whether the (Secretary) exceeded the authority delegated to (him) . . . is well established . . . Where the empowering provision of a statute states simply that the agency may "make . . such rules and regulations as may be necessary to carry out the provisions of this Act," we have held that the validity of a regulation promulgated thereunder will be sustained so long as it is "reasonably related to the purposes of the enabling legislation."

411 U.S. at 369, 93 S.Ct. at 1660. The empowering provision of the Social Security Act, 42 U.S.C. § 1302, contains language similar to the statute discussed in *Mourning* and, thus, requires the agency's manual [11] to be reasonably related to the purpose of the enabling legislation. *Johnson's Professional Nursing Home v. Weinberger,* 490 F.2d 841

---

11. The standard of review is not altered because plaintiff challenges the provisions of a manual rather than a regulation. *Thorpe v. Housing Authority,* 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969). In *Thorpe* the Supreme

Court considered the validity of requirements imposed in a circular issued by the Department of Housing and Urban Development (HUD). The challenged circular was the initial promulgation of a forthcoming change to be incorpo-

(5th Cir. 1974), *affirming, Opelika Nursing Home, Inc. v. Richardson,* 356 F.Supp. 1338 (M.D.Ala.1973).

Nothing in the statutory scheme or in the statutory history [12] indicates that Congress meant to preclude the establishment of a staff-preference policy. On the contrary, support may be found for the Secretary's interpretation of the Congressional intent underlying 42 U.S.C. § 1395x(k).

During Congressional hearings conducted prior to the passage of the original Medicare legislation, Robert M. Ball, Commissioner of the Social Security Administration, testified as follows before the House Ways and Means Committee:

> The utilization review committee . . . would ordinarily be a committee of the staff physicians in a given hospital. That would be the major way. Now, there is an alternative in case it is a very small hospital, so you would not have enough doctors on the staff to make it reasonable

to set up a committee . . . The utilization review would be, as I say, almost always the physicians who are staff members of that hospital.

*Executive Hearings on H.R. 1 and Other Proposals for Medical Care for the Aged Before the House Committee on Ways and Means, 89th Cong., 1st Sess., pt. 1, at 60 (1965).* (1965 Hearings.)

Assistant Secretary of Health, Education, and Welfare, Wilber J. Cohen, further reinforced the correctness of the Secretary's view that the bill was intended to provide for utilization review by non-staff committees only where the size of the staff makes staff review impracticable. Cohen explained the purpose of including in the bill the non-staff committee alternative, which presently appears as 42 U.S.C. § 1395x(k)(2)(B)(i):

> This problem of the small hospital in communities . . . small hospital with only three or four doctors, presented us

---

rated in HUD's Low Rent Management Manual. Applying essentially the same standard of review later explicitly adopted by *Mourning,* 411 U.S. at 369, 93 S.Ct. 1652, the Court found the provisions of the circular to be consistent with and reasonably related to the purposes of the enabling legislation under which it was promulgated.

We note the existence of authority which supports the proposition that an interpretative rule such as HIM7—interpretive rules and substantive regulations are defined in *COMPLIANCE WITH ADMINISTRATIVE PROCEDURE ACT, infra*—promulgated without public participation in the rule-making process is entitled to less deference than a substantive regulation. *E. g., Pacific Gas & Electric Co. v. Federal Power Commission,* 164 U.S.App.D.C. 371, 506 F.2d 33 (1974). The rationale is that absent full public participation in rule making, which is only required for the validity of substantive regulations, judicial review may be the first stage at which the policy of a rule is subjected to full criticism by interested parties. Moreover, an interpretive rule does not have the force of law. *Pacific Gas & Electric Co., supra. See generally* 1 K. Davis, Administrative Law Treatise § 5.01 *et seq.* (1958, Supp. 1970). In any event, the application of a standard of review which gives us more leeway to assess the underlying wisdom of the interpretive rule would produce no change in our result. HEW's expertise can not be ignored, particularly since judgments on the soundness of mandatory staff review lie beyond judicial competence. Additionally, the policy of preference

for staff review has been in effect since 1968 and Congress has not chosen to alter it. *See Cory Corp. v. Sauber,* 363 U.S. 709, 712, 80 S.Ct. 1331, 4 L.Ed.2d 1508 (1960). Although we may be free to substitute our judgment for that of HEW we decline to do so. Instead, we elect to adopt the rule in question as a correct interpretation of the statute.

12. Portions of the relevant legislative history cited by both plaintiff and defendant are ambiguous and shed little light on the Congressional intent regarding the preferred composition, or lack thereof, of utilization review committees. S.Rep. No. 404, 89th Cong. 1st Sess. (1965), U.S.Code Cong. & Admin.News 1965, pp. 1943, 1988, for example, provides in part:

> Hospitals and extended care facilities participating in the program would be required to have in effect a utilization review plan . . . The review would *ordinarily* be carried out by a staff committee of the institution . . . *Alternatively,* the review could be conducted by a similar group outside the institution. (Emphasis added.)

The use of the terms "ordinarily" and "alternatively" is contradictory. By the former term the Senate Finance Committee anticipates with approval that review will be performed by staff committees as a general practice and thereby implies a preference for staff committees; by the latter term the committee designates staff and non-staff committees as two options either of which may be chosen.

with quite a problem. We have written in here for those smaller hospitals where the two or three doctors don't want to be just be reviewing their own cases on each other . . .

1965 Hearings at 107.

 Those who attack an administrator's interpretation of a statutory scheme as inconsistent with the purpose of the enabling legislation bear a heavy burden. HEW's expertise in the area of its authority entitles it to considerable deference. *Johnson's Professional Nursing Home v. Weinberger, supra.* The Secretary has determined that the avowed Congressional purpose of utilization review—to promote the most efficient use of health care facilities and services, 42 U.S.C. § 1395x(k)(1)—is best effectuated by placing the responsibility of review on doctors responsible for services within the treating institution. There are no compelling indications that this policy conflicts with a reasonable interpretation of 42 U.S.C. § 1395x(k) or 20 C.F.R. 405.1035(e).[13] It, therefore, should be followed. *See Red Lion Broadcasting Co. v. F.C.C.,* 395 U.S. 367, 381, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969). Accordingly, we conclude that the Secretary did not exceed the authority vested in him by 42 U.S.C. § 1302.

### COMPLIANCE WITH ADMINISTRATIVE PROCEDURE ACT

Plaintiff claims that HIM7 is not an interpretative rule but a substantive regulation which is invalid because the Secretary failed to give prior notice and opportunity for comment as required by Section 4 of the Administrative Procedure Act, 5 U.S.C. § 533.[14] The Secretary contends that HIM7 is an interpretative rule which is excluded from the notice requirements of the Administrative Procedure Act by § 553(b)(3)(A).

 The distinction between interpretative rules and substantive regulations issued by administrative agencies is easily verbalized. An interpretative rule is a clarification or explanation of existing laws or regulations rather than a substantive modification in or adoption of new regulations. Substantive regulations create law whereas interpretative rules are statements as to what the administrative officer thinks the statute or regulation means. *Continental Oil Co. v. Burns,* 317 F.Supp. 194 (D.Del. 1970). *See also* 1 K. Davis, Administrative Law Treatise § 5.01 *et seq.* (1958, Supp. 1970). Applying these definitions to particular agency rules, however, presents a more difficult task.

 As stated in *Pharmaceutical Manufacturers Association v. Finch,* 307 F.Supp. 858 (D.C.Del.1970) the determination that a rule or regulation is subject to the notice and comment provisions of Section 4 of the Administrative Procedure Act should be based upon the basic purpose of the statutory requirements rather than upon facile semantic distinctions.

The basic policy of Section 4 at least requires that when a proposed regulation

---

**13.** Plaintiff cites 42 U.S.C. § 1320, the Medicare Deadline Amendments Bill, in support of its position. Section 1320 established Professional Standards Review Organizations (PSRO's) to review the quality and necessity of health services provided under the medicare and medicaid programs. PSRO's can delegate their review responsibilities to hospital review committees or carry out review activities on their own if a hospital cannot conduct satisfactory review or chooses that the PSRO perform the review for it. On the basis of this statute plaintiff would have us conclude that Congress has evidenced an intent to allow hospitals to delegate utilization review functions to non-staff committees. This argument is unavailing. Whether a hospital can refuse to use its utilization review machinery to conduct review for a PSRO is unrelated to the inquiry of whether a hospital can delegate utilization review functions to a non-staff committee. Utilization review and professional standards review are separate and distinct functions; the former operates on an institution by institution basis while the latter operates as a nationwide program of utilization review. *See Association of American Physicians and Surgeons v. Weinberger,* 395 F.Supp. 125 (N.D.Ill.1975).

**14.** 5 U.S.C. § 553 requires general public notice of rulemaking proceedings and an opportunity for interested persons to "participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation."

of general applicability has a substantial impact on the regulated industry . . notice and opportunity for comment should first be provided.

307 F.Supp. at 863. This "substantial impact" test was announced by a three-judge court in *National Motor Freight Traffic Assn. v. United States*, 268 F.Supp. 90 (D.D.C.1976) aff'd 393 U.S. 18, 89 S.Ct. 49, 21 L.Ed.2d 19 (1968), and frequently has been followed. *See, e. g., Commonwealth of Pennsylvania v. United States*, 361 F.Supp. 208 (M.D.Penn.1973); *Continental Oil Co. v. Burns, supra.*

 We are of the opinion that HIM7 is an interpretative rule having no "substantial impact" on plaintiff and as such was not subject to the notice and opportunity for comment provisions of the Administrative Procedure Act. The utilization review provisions of HIM7 are not a complex and all pervasive set of regulatory matter. Rather, they merely represent an attempt to clarify or define the nature of the utilization review committees required by § 1395x(k) and by 20 C.F.R. § 405.1035(e). No drastic change in the existing law is effected by making explicit a preference for staff committees consistent with and, in fact, intended [15] by that law. *See Garelick Mfg. Co. v. Dillon*, 114 U.S.App.D.C. 218, 313 F.2d 899 (1963).

## CONSTITUTIONALITY

 Finally, plaintiff contends that the challenged provisions of HIM7 constitute unreasonable governmental interference with the right of doctors to practice medicine, in violation of the Fifth Amendment. We find this argument to be without merit. The disputed provisions of the manual pro-

claim a policy which is reasonably related to a legitimate governmental purpose and which does not act upon plaintiff's members in such a mandatory fashion as to amount to an unconstitutional interference.

 The Federal government has the right to regulate that which it subsidizes. *Wickard v. Filburn*, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942). Plaintiff does not deny that some form of utilization review is necessary in order to avoid over-utilization of health care services and to achieve more effective control over the costs of those services.[16] Utilization review is instrumental in enforcing certain standards which must be met as a prerequisite for the dispensation of federal funds. The policy of requiring hospitals having two or more physicians on their staffs to conduct in-house review while allowing smaller hospitals and extended care facilities to utilize non-staff review is an attempt to increase the effectiveness of utilization review and clearly is a legitimate exercise of government regulation. *Association of American Physicians and Surgeons v. Weinberger*, 395 F.Supp. 125 (N.D.Ill.1975); *Rasulis v. Weinberger*, 502 F.2d 1006 (7th Cir. 1974); *Flemming v. Nestor*, 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960).

 The policy of preference for staff committees where feasible does not regulate the *practice* of medicine. Rather, it regulates the procedures which *hospitals* and *extended care facilities* must follow to obtain government medicare funds. The preference policy does not prohibit any physician from rendering whatever treatment he deems necessary in the exercise of his professional judgment.[17] Plaintiff cannot

---

**15.** *See* testimony of Robert M. Ball and Wilber J. Cohen given at the 1965 Hearings, *supra.*

**16.** Plaintiff does not question the constitutionality of utilization review in general, but only of HIM7's preference for staff review.

**17.** Utilization review does not prevent the treating physician from keeping his patient in the hospital as long as he desires or from prescribing whatever drugs he wishes for as long as he deems necessary. However, a determina-

tion by the review committee that certain treatment is excessive will prevent the *institution* from receiving federal medicare funds for the surplus medical care. Such regulation has, at best, an indirect effect on the physician's practice of medicine which must be tolerated in order to prevent the over-utilization of medical facilities and services.

Furthermore, we are unable to understand plaintiff's contention that utilization review conducted by staff doctors is a greater burden on the practice of medicine than non-staff re-

be heard to complain because some staff physicians must devote part of their time to utilization review.[18] Such is the price exacted for the opportunity to receive government funds which the participating hospitals and the doctors practicing at those hospitals otherwise would not have received. Hospitals are not required to participate in the medicare program and doctors are not required to practice at hospitals which qualify as providers of services. Certainly, an economic incentive to participate in the program exists. However, such inducement is not tantamount to coercion. *Association of American Physicians and Surgeons v. Weinberger, supra*; *Steward Machine Co. v. Davis,* 301 U.S. 548, 57 S.Ct. 883, 81 L.Ed. 1279 (1937).

For the foregoing reasons, plaintiff's motion for summary judgment is denied. Defendant's motion for summary judgment is granted. Let judgment be entered accordingly.

view (to which plaintiff has no objection). Plaintiff has not explained why a doctor on the staff of a hospital would be more likely than an "outside" physician to deem treatment prescribed by fellow staff doctors excessive.

18. The implementation of non-staff review desired by plaintiff would produce more displeasure among reviewing physicians than the present system of staff review. If doctors on the staffs of hospitals do not wish to perform the review necessary for the institutions at which they practice to receive federal funds, it is reasonable to assume that non-staff doctors would be even less willing to conduct review for institutions at which they do not practice.