2024 IL App (1st) 230072

FOURTH DIVISION
Order filed: February 29, 2024

No. 1-23-0072

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| AMERICAN AVIATION SUPPLY, LLC, | ) | Petition for Review of Order |
| | ) | of the Illinois Independent |
| Petitioner, | ) | Tax Tribunal. |
| | ) | |
| v. | ) | Nos. 21TT27, 21TT54 |
| | ) | |
| ILLINOIS DEPARTMENT OF REVENUE, ILLINOIS | ) | |
| INDEPENDENT TAX TRIBUNAL, | ) | Brian F. Barov, |
| | ) | Administrative Law Judge, |
| Respondents. | ) | presiding. |

JUSTICE HOFFMAN delivered the judgment of the court, with opinion.
Presiding Justice Rochford and Justice Ocasio concurred in the judgment and opinion.

**OPINION**

¶ 1    In this petition for direct administrative review of a final decision of the Illinois Independent Tax Tribunal ("the Tribunal"), the petitioner, American Aviation Supply, LLC ("American"), challenges the Tribunal's determination that a sales tax exemption for property that is bought and temporarily stored in-state before being transported and used out of state did not apply to its customers' purchases of aviation fuel because the fuel was not consumed solely outside of the state. We affirm the Tribunal's decision.

¶ 2 The factual history of this case is brief and not in dispute. At issue is the interpretation and application of an exemption contained in the Retailers' Occupation Tax Act ("ROTA") (35 ILCS 120/1 *et seq.* (West 2010)). The ROTA generally requires retailers to pay a tax on the sale of personal property within the state of Illinois. See 35 ILCS 120/2 (West 2022). It is complemented by the Use Tax Act ("UTA") (35 ILCS 105/1 *et seq.* (West 2022)), which imposes a tax on the in-state use of property that was purchased outside of the state. Together, the ROTA and UTA form what is commonly referred to as the Illinois "sales tax." *Kean v. Wal-Mart Stores, Inc.*, 235 Ill. 2d 351, 362 (2009).

¶ 3 Among the ROTA's exemptions is one that, during the relevant time period of 2011 to 2016, exempted "personal property purchased from an Illinois retailer by a taxpayer engaged in centralized purchasing activities in Illinois who will, upon receipt of the property in Illinois, temporarily store the property in Illinois (i) for the purpose of subsequently transporting it outside this State for use or consumption thereafter solely outside this State." 35 ILCS 120/2-5(38) (West 2010). This "expanded temporary storage exemption" ("ETS Exemption") also provides that the Director of the Department of Revenue shall "issue a permit to any taxpayer in good standing with the Department who is eligible for the exemption under this paragraph (38)," and that the permit "shall authorize the holder, to the extent and in the manner specified in the rules adopted under this Act, to purchase tangible personal property from a retailer exempt from the taxes imposed by this Act." *Id.* Notably, as one of the "rules adopted under this act," the Department promulgated a rule ("the Permitting Regulation") stating that "[i]f an Expanded Temporary Storage Permit holder knows that a certain percentage of all his or her purchases from a given seller will qualify for the expanded temporary storage exemption, he or she may provide a blanket certificate of expanded

temporary storage stating that a designated percentage of purchases qualify for the expanded temporary storage exemption." 86 Ill. Adm. Code 150.310(a)(6)(D)(ii).

¶ 4    American is a Delaware LLC and a wholly owned subsidiary of American Airlines, Inc. It operated in Illinois as an aviation fuel retailer during the relevant time period of 2011 to 2016. During that time, American sold fuel to American Airlines and U.S. Airways, Inc. (together "the Airlines"), who took delivery of the fuel in Illinois and temporarily stored it in consortium tanks at O'Hare International Airport ("O'Hare") in Chicago before loading the fuel into airplanes operating out of the airport. According to the Airlines, only 2% of the fuel purchased from American and loaded into planes at O'Hare was consumed inside the state of Illinois, with the remaining 98% being consumed after the planes left the state's airspace.

¶ 5    In 2010 and 2014, the Airlines obtained permits from the Illinois Department of Revenue ("the Department") pursuant to section 2-5(38) of the ROTA certifying that 98% of their purchased fuel was consumed outside the state of Illinois. The Airlines considered that portion to be exempt from the retailers' occupation tax. After being provided with the Airlines' permits, American sought reimbursement from the Department of approximately $162.7 million in occupation taxes that it had paid on its fuel sales to the Airlines between 2011 and 2016, plus interest. The Department denied the refund claims based on its interpretation of existing law, including section 2-5(38) and the case of *United Air Lines v. Mahin*, 49 Ill. 2d 45 (1971) (*United I*), which will be discussed further in our analysis to follow.

¶ 6    American then petitioned for review with the Tribunal. The parties conducted discovery, submitted joint stipulations of fact, and then filed cross-motions for summary judgment. In support of its case, American argued that the plain text of section 2-5(38) of the ROTA and the Permitting

Regulation allowed for its fuel sales to the Airlines to be divided into taxable and non-taxable portions in accordance with what has been called the "burn-off rule," with only the fuel used or "burned off" while in Illinois being subject to tax. American also contended that *United I* was not applicable to the facts of this case because it concerned the "use" of fuel, which was interpreted to include the loading of fuel into the planes' tanks, while the ETS Exemption concerns "consumption," which occurs both inside and outside of Illinois. After holding oral argument on the motions, the Tribunal granted the parties leave to submit supplemental authority on whether construing the ETS Exemption as exempting the percentage of the fuel consumed solely outside of Illinois unconstitutionally discriminated against interstate commerce.

¶ 7     After the parties filed their supplemental authority, the Tribunal issued its ruling denying American's motion for summary judgment and granting the Department's. The Tribunal concluded that American's fuel sales to the Airlines did not qualify for the ETS Exemption because the fuel was not consumed "solely" outside of Illinois. The Tribunal also rejected American's contention that the Permitting Regulation supported its view that the temporarily stored fuel could be divided into taxable and tax-exempt portions, with the Tribunal explaining that American's reading of the Permitting Regulation would expand the governing statute in an impermissible manner. Finally, the Tribunal opined that American's interpretation of the ETS Exemption would likely result in unconstitutional economic discrimination under the commerce clause of the United States Constitution (U.S. Const., art. I, § 8) because it would give an advantage to in-state retailers. The Tribunal, therefore, affirmed the Department's denial of American's refund claims. This petition for review pursuant to Supreme Court Rule 335(a) (eff. July 1, 2017) follows.

¶ 8    When, as in this case, parties file cross-motions for summary judgment, they agree that only a question of law is involved and invite a decision based upon the record. *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. The Tribunal's decision on a question of law is reviewed *de novo*. *Horsehead Corp. v. Department of Revenue*, 2019 IL 12415, ¶ 27 (citing *Elementary School District 159 v. Schiller*, 221 Ill. 2d 130, 142 (2006)).

¶ 9    The instant case presents a question of statutory construction. We are not bound by the Tribunal's interpretation of a statute, but, due to its expertise on tax law, the Tribunal's "interpretation is relevant where there is reasonable debate about the statute's meaning." *Id.* In addition to the consideration we give the Tribunal's interpretation, we grant even greater deference to that of the Department. Indeed, "[e]ven where review is *de novo,* an agency's construction is entitled to substantial weight and deference. Courts accord such deference in recognition of the fact that agencies make informed judgments on the issues based upon their experience and expertise and serve as an informed source for ascertaining the legislature's intent." *Provena Covenant Medical Center v. Department of Revenue*, 236 Ill. 2d 368, 387 n.9 (2010)

¶ 10    Before beginning our analysis, it is necessary to provide additional background information regarding the ROTA, the UTA, and the case of *United I*, which interpreted the UTA's similarly-worded temporary storage exemption. The UTA was enacted in 1955 as a complement to the ROTA. *United I*, 49 Ill. 2d at 46. While the ROTA imposed a tax on the sale of property within the state of Illinois, the UTA taxed the in-state use of property that was purchased out of state for the purposes of "preventing evasion of retailers' occupation tax by persons making out-of-state purchases of tangible personal property for use in Illinois, and of protecting Illinois merchants against diversion of business." *Id.* at 46–47.

¶ 11    Unlike the ROTA, at least as it was composed at the relevant time in *United I*, the UTA contained a temporary storage exemption providing that the use tax would not be imposed on "the temporary storage, in this State, of tangible personal property which is acquired outside this State and which, subsequent to being brought into this State and stored here temporarily, is used solely outside this State." *Id.* at 47; see also Ill. Rev. Stat. 1955, ch. 120, ¶ 439.3. From the time that it was enacted, as it relates to common carriers such as airlines, the Department interpreted the tax as only applying to the portion of fuel consumed in or over Illinois. *United I*, 49 Ill. 2d at 48. As mentioned previously, this was known as a the "burn-off" rule. *Id.* However, in 1963 the Department changed its interpretation and abandoned the burn-off rule, declaring by bulletin that "[t]he Department's position is that temporary storage ends and a taxable use occurs when the fuel is taken out of storage and placed into the tanks of the airplane, railroad engine or truck. At this point the fuel is converted into its ultimate use, and, therefore, a taxable use occurs in Illinois." *Id.* In other words, the exemption would apply "only if the temporarily stored fuel is transported out of the state for use elsewhere by some means other than placing it in equipment which would consume it." *Id.*

¶ 12    United Air Lines, Inc. ("United"), challenged this new interpretation in court, ultimately reaching the Supreme Court of Illinois, which upheld the Department's new application of the statute. The court found the statute's language to be "plain, simple and unambiguous" and read it as providing that "the temporary storage and the withdrawal therefrom are not taxable uses, if the property in question is to be used solely outside the State." *Id.* at 55. According to our supreme court, if United were to temporarily store fuel in Illinois, transport the fuel from Illinois to Wisconsin, and then load it into a plane there, "neither the storage, nor the withdrawal, nor the

transportation of the fuel outside the State would be uses subject to the tax." *Id.* But United was not storing its fuel "with any intention that the fuel will be used solely outside this state." *Id.* "Rather, the fuel [was] stored here only to facilitate United's operations from the O'Hare and Midway airports within the State." *Id.* That form of storage, the supreme court concluded, did not qualify for the temporary storage exemption, and "either the storage itself or the withdrawal therefrom are uses which may be taxed" under the UTA. *Id.* at 56.

¶ 13    The two justices writing our supreme court's *per curiam* opinion in *United I* also opined that the burn-off rule was likely unconstitutional as a violation of the commerce clause of the U.S. Constitution. *Id.* at 51–53. On appeal of our supreme court's decision, the United States Supreme Court removed that concern and held that there was no constitutional barrier to the use of the burn-off rule. *United Air Lines, Inc. v. Mahin*, 410 U.S. 623, 632 (1973) (*United II*). In light of that holding, the Supreme Court vacated our supreme court's ruling and remanded for the two justices to reconsider their decision. *Id.* On remand, the Supreme Court of Illinois stated simply that "[t]he conclusions of those justices is that the current interpretation of the [UTA] and the application of it by the Department are not improper." *United Air Lines, Inc. v. Mahin*, 54 Ill. 2d 431, 432 (1973) (*United III*).

¶ 14    In 2001, the ROTA was amended to add the ETS Exemption contained in section 2-5(38), and the temporary storage exemption contained in section 3-55(j) of the UTA was amended to be practically identical. See Public Act 92-488 (eff. Aug. 23, 2001).

¶ 15    With that history in mind, we now turn to the case before us. In urging reversal of the summary judgment entered by the Tribunal in favor of the Department, American raises two arguments in support of its refund claims. First, it contends that the ETS Exemption contains what

it calls a "timing rule" that limits the scope of the word "solely" in a manner that the UTA's exemption at issue in *United I* did not. Second, American asserts that the Department's Permitting Regulation is consistent with and supports its interpretation that only the fuel consumed inside Illinois is subject to the ROTA. We disagree.

¶ 16    "The fundamental rule of statutory interpretation is to ascertain and effectuate the legislature's intent." *Horsehead*, 2019 IL 124155, ¶ 37 (citing *Comprehensive Community Solutions, Inc., v. Rockford School District No. 205*, 216 Ill. 2d 455, 473 (2005)). "The plain language of the statute remains the best indication of this intent. [Citation.] Where the language of a statute is clear, we may not read into it exceptions that the legislature did not express, and we will give it effect as written. [Citation.] We also will give undefined statutory terms their ordinary meanings. [Citation.]" *Id.*

¶ 17    The plain language of the ETS Exemption contained in section 2-5(38) of the ROTA is, in our opinion, clear and unambiguous. Again, it states that property is exempt from the occupation tax when it is purchased from an Illinois retailer and the purchaser will, "upon receipt of the property in Illinois, temporarily store the property in Illinois (i) for the purpose of subsequently transporting it outside this State for use or consumption thereafter solely outside this State." With instruction from *United I*, which we find applicable to the present case and informative regarding the meaning and significance of the use of "solely," we read this language as exempting property that is purchased and temporarily stored in Illinois and then solely used or consumed entirely outside of the state. As it relates to aviation fuel, when fuel is removed from its temporary storage, loaded into a plane at O'Hare, and then consumed partly in Illinois, that fuel does not qualify for

the ETS Exemption because it was not transported outside of the State for consumption "solely" outside of Illinois.

¶ 18    American raises two arguments in support of its contrary reading of section 2-5(38), but neither changes our interpretation of the meaning of the statute's plain language. First, it argues that a "timing rule" limits the ETS Exemption's use of "solely" in a manner that the exemption contained in the UTA that was at issue in *United I* did not. Specifically, American contends that by using "thereafter" following "transporting" in the phrase "for the purpose of subsequently transporting it outside this State for use or consumption thereafter solely outside this State," the statute only requires that the fuel be used solely outside of Illinois *after* it is transported out of the state. In other words, according to American, the ETS Exemption "allows some of the fuel to be consumed in Illinois without destroying the exemption for the fuel that is transported outside of Illinois for consumption thereafter solely outside Illinois" and that the use of "solely" merely means that "the fuel transported outside of Illinois cannot be returned later to Illinois for use or consumption in Illinois."

¶ 19    In our view, however, the statute's use of "thereafter" is consistent with the Tribunal's view that the entire use or consumption of the property at issue must be outside of the state of Illinois. As we read the statute, the meaning of "thereafter" is that the use or consumption will be after transportation outside the state, not before, and that the use or consumption will be entirely outside the state. Stated differently, in order to qualify for the ETS Exemption, the purpose of the temporary storage must be for future transportation outside of Illinois for use or consumption solely and entirely outside of the state.

¶ 20    Second, American argues that the Permitting Regulation supports its view that the fuel consumed out of state is eligible for the ETS Exemption. As we recited earlier, the Permitting Regulation promulgated by the Department provided that "[i]f an Expanded Temporary Storage Permit holder knows that a certain percentage of all his or her purchases from a given seller will qualify for the expanded temporary storage exemption, he or she may provide a blanket certificate of expanded temporary storage stating that a designated percentage of purchases qualify for the expanded temporary storage exemption." 86 Ill. Adm. Code 150.310(a)(6)(D)(ii). American contends, therefore, that through the Permitting Regulation the Department has confirmed that the ETS Exemption may apply on a percentage basis. Again, we do not share American's view of the issue.

¶ 21    While it is true that the Permitting Regulation allows purchasers to certify that they believe that only a portion of a given purchase will be tax exempt, that is not inconsistent with our and the Department's reading of section 2-5(38). Our supreme court's analysis in *United I* is again instructive on this issue. There, the court explained that a party would not run afoul of the "solely" language in the UTA's similar temporary storage exemption if it were to withdraw fuel from storage, transport it to another state, and then load it into a plane there for use solely outside of Illinois. *United I*, 49 Ill. 2d at 55. Thus, if the Airlines were to have purchased fuel from American, temporarily stored it in Illinois, transported a portion of it to Wisconsin, and then used that portion in planes there, that portion of the purchase would qualify for the ETS Exemption. In such a scenario, it would be proper for the Airlines to certify, pursuant to the Permitting Regulation, that the percentage of the purchase being transported to Wisconsin was tax exempt. Thus, the

Permitting Regulation is consistent with our reading of section 2-5(38) and with the Department's interpretation and application of the statute.

¶ 22     In addition to those two primary arguments, American also asserts that the legislative history of the storage exemptions contained in the ROTA and UTA supports its reading of the ETS Exemption. However, because we do not view section 2-5(38) as ambiguous, "we cannot resort to extrinsic aids such as legislative history." *Cripe v. Leiter*, 291 Ill. App. 3d 155, 159 (1997). Therefore, we will not engage in that analysis.

¶ 23     Finally, American appears to argue that it is entitled to an abatement of the occupation taxes that it paid on its fuel sales to the Airlines between 2011 and 2016 based on the provisions of section 4(c) of the Taxpayers' Bill of Rights, which provides that the Department has the power and duty to "abate taxes and penalties assessed based upon erroneous written information or advice given by the Department." 20 ILCS 2520/4(c) (West 2022). American's argument based on section 4(c) appears to be premised on the contention that the Permitting Regulation is either invalid or inconsistent with the statutory ETS Exemption. Having found that the Department's interpretation of the ETS Exemption found in section 2-5(38) of the ROTA is consistent with the unambiguous language of the statute and that the Permitting Regulation is consistent with that interpretation, we reject American's argument that it is entitled to relief based on the Taxpayers' Bill of Rights.

¶ 24     "Under Illinois law, taxation is the rule, and exemption is the exception." *Horsehead*, 2019 IL 124155, ¶ 33. "If there is any doubt as to applicability of an exemption, it must be resolved in favor of requiring that tax be paid." *Provena*, 236 Ill. 2d at 388 (citing *Streeterville Corp. v. Department of Revenue*, 186 Ill. 2d 534, 539 (1999) (Harrison, J., dissenting, joined by McMorrow, J.)).

¶ 25    Further, because we can decide this case on non-constitutional grounds, we also will not address the parties' arguments regarding whether American's interpretation of the ETS Exemption would run afoul of the commerce clause of the U.S. Constitution. See U.S. Const., art. 1, § 8, cl. 3; *People v. Bass*, 2021 IL 125434, ¶ 30 ("[T]his court's long-standing rule is that cases should be decided on nonconstitutional grounds whenever possible, reaching constitutional issues only as a last resort. [Citation.] Consequently, courts must avoid reaching constitutional issues unless necessary to decide a case. [Citation.]").

¶ 26    Based on the foregoing analysis, we conclude that the plain language of section 2-5(38) supports the Department's interpretation of the statute, and based on that interpretation, the fuel at issue did not qualify for the ETS Exemption because, after being loaded into the Airlines' planes in Illinois, it was consumed partly in Illinois. As a consequence, we affirm the decision of the Tribunal denying American's motion for summary judgment and granting the Department's cross-motion for summary judgment.

¶ 27    Tribunal decision affirmed.

**_American Aviation Supply v. Illinois Department of Revenue_ 2024 IL App (1st) 230072**

Petition for Review of Order of the Illinois Independent Tax Tribunal; Nos. 21TT27, 21TT54
Brian F. Barov, Administrative Law Judge, presiding.

Appellants:   Mary A. McNulty (admitted pro hac vice)
              Lee S. Meyercord (admitted pro hac vice)
              HOLLAND & KNIGHT LLP
              1722 Routh Street, Suite 1500
              Dallas, Texas 75201
              Phone: (214) 969-1700

              William F. Farley
              Holland & Knight LLP
              150 N. Riverside Plaza, Suite 2700
              Chicago, Illinois 60606
              Phone: (312) 263-3600

Appellee:     KWAME RAOUL Attorney General State of Illinois
              JANE ELINOR NOTZ Solicitor General
              100 West Randolph Street 12th Floor
              Chicago, Illinois 60601
              Phone: (312) 814-3312

              BRIDGET DIBATTISTA Assistant Attorney General
              100 West Randolph Street 12th Floor
              Chicago, Illinois 60601
              Phone: (312) 814-2130